SALVATORE STIZZA, PROSECUTOR-APPELLANT, v. ESSEX COUNTY JUVENILE AND DOMESTIC RELATIONS COURT, RESPONDENT.

Argued October 18, 1944—Decided January 4, 1945.

For the prosecutor-appellant, *Thomas Brunetto.*

For the respondent, *Arthur T. Vanderbilt* (*G. Dixon Speakman,* of counsel).

The opinion of the court was delivered by

PORTER, J.   This appeal is from a judgment of the Supreme Court dismissing a writ of *certiorari* to review an order of the Essex County Juvenile and Domestic Relations Court of May 3d, 1943, which denied the application of appellant to vacate and set aside an order, dated July 2d, 1940, of final commitment of him to the Essex County Hospital for the Insane. The appellant was confined in the hospital until August 15th, 1940, when he was released. He has not since been confined, and as far as appears has not been molested,

nor have his movements been in any way restricted. It is true that when he was released from the hospital he was instructed by the hospital authorities that he was to stay away from the Township of Livingston and that upon his failure to do so it would be necessary to return him to the hospital. Under the circumstances we think this condition may not be made effective and that he may not be again committed except by new proceedings under either *R. S.* 30 :4–37 or *R. S.* 30 :4–38. This is conceded by respondent. So we conclude that there is no merit in the argument that he is unlawfully deprived of his liberty.

It appears that on May 20th, 1940, the director of welfare and overseer of the poor in the Township of Livingston, where the appellant resided, made an application for commitment of appellant to the Essex County Hospital, as an insane person. Two physicians certified that he was insane and required care and treatment in an institution for the insane. This application was presented to the judge of the Recorder's Court of the Township, who on May 22d, 1940, ordered appellant temporarily committed to the hospital until final hearing. Thereafter, on July 2d, 1940, after notice to appellant and a hearing, the judge of the Essex County Juvenile and Domestic Relations Court entered a final order of commitment. On August 12th, 1942, appellant petitioned that court for the vacation of the order of commitment. The prayer of this petition was denied, and the writ of *certiorari* was allowed by Mr. Justice Parker, returnable before him, to review that action. Upon return of the writ and after hearing counsel, Mr. Justice Parker, for the court, concluded that the proceeding under review had been in substantial accordance with the law and dismissed the writ. With that conclusion we are in accord.

It is argued by the appellant that his commitment was illegal because he was not accorded the right of trial by jury, that the police recorder who committed him in the first instance was without jurisdiction, that the commitment was otherwise illegal because of certain procedural defects, which will be discussed later. The respondent argues that these questions are moot for the reason that appellant is at liberty

and has been since August 15th, 1940, and is not therefore being deprived of his liberty nor is he being deprived of his property under the order of commitment of July 2d, 1940. However that may be, the appellant argues that the commitment has adjudged him insane and that he suffers from that stigma in his business and social relations and is entitled to have that status changed by a vacation of the adjudication. We think the questions are moot and that no substantial or effective redress may be afforded the appellant at this time by a vacation of the order. In such a situation the courts refuse to pass on moot questions on appeal. *Coryell* v. *Holcombe,* 9 *N. J. Eq.* 650; *Mills* v. *Green,* 159 *U. S.* 651; 40 *L. Ed.* 293. Nonetheless, for reasons to be stated, we think the judgment of dismissal of the writ was right on the merits and should be affirmed.

The rule was well established at common law that insane persons could be restrained, in order to prevent them from doing harm to themselves or others, without the necessity of any judicial hearing. Compare *Sporza* v. *German Savings Bank,* 192 *N. Y.* 8; *Allgor* v. *New Jersey State Hospital,* 80 *N. J. Eq.* 386; *Boesch* v. *Kick,* 97 *N. J. L.* 92. Early in the history of this state, however, various statutes were enacted governing the matter and altering the common law rule by requiring judicial proceedings for the restraint of insane persons. No useful purpose will be served by a review of these statutes. At the time of the adoption of our present constitution in 1844 the pertinent law in effect was the act of February 28th, 1820, entitled "An act concerning idiots and lunatics." *Elmer's Digest,* 1838, *p.* 237. The provisions of this act did not require a determination of insanity by a jury. It also safeguarded the common law right of restraining an insane person without judicial proceedings. This act was carried through the various revisions until the Revision of 1877, page 605, Lunatics, section 21. Article 1, section 7 of the constitution providing that "the right of a trial by jury shall remain inviolate" is not intended to give that right in cases where it did not previously exist but merely to preserve it inviolate in cases where it existed at the time of the adoption of the constitution. It was so decided in

*McGear* v. *Woodruff,* 33 *N. J. L.* 213 (at *p.* 216), in an opinion by Mr. Justice Depue. We conclude, therefore, that the statute under which the appellant was committed, *R. S.* 30:4–23, *et seq.,* which does not make mandatory a trial by jury, does not violate the constitutional provision of article 1, section 7 for the reason stated.

The contention that the police recorder, who committed appellant pending action by the judge of the Juvenile and Domestic Relations Court, was without jurisdiction need not be considered, because it was not reviewable under the writ. The writ reviews only the proceedings in the Juvenile and Domestic Relations Court. Nevertheless, we think the temporary commitment was valid. It was made upon a summary proceeding under *R. S.* 30:4–37 and has no relation to the later proceedings for final commitment. As to the procedural defects which, it is argued, constitute the order of commitment invalid, we conclude that the rights of appellant have not been prejudiced and that there was substantial compliance with the statute. A discussion of these alleged procedural defects follows. It is argued that the hearing was not a fair one because it was not held on the date mentioned in the notice, June 7th, 1940, but was continued until July 2d, 1940, without endorsement of a continuance on the application, as required by *R. S.* 30:4–42. We do not think the hearing unfair or prejudicial to the appellant because of this procedural irregularity. Appellant was not present at the hearing, the chief executive officer of the hospital having certified that in his opinion it would be prejudicial to the health of the patient or unsafe to produce him. His presence or that of his attorney is not required under the circumstances. *R. S.* 30:4–41. It does not appear that he was prevented from attending for any other reason than his mental condition, as certified by the doctor, or that his attorney was prevented from appearing. If there were any facts to justify such contention, there being none on the record, the burden of presenting these facts by obtaining a rule for the purpose is on the appellant. *Conover* v. *Bird,* 56 *N. J. L.* 228; *Houman* v. *Schulster,* 60 *Id.* 132; *Smart* v. *North Hudson County Railroad Co.,* 66 *Id.* 156; *Hillman* v. *Sea Isle City,*

122 *Id.* 327. No such proofs were sought, and the record showed nothing which indicated any denial of the opportunity of appellant to be represented by counsel or to appear personally, if he were able to do so. It is also argued that the order is invalid because no notice of final hearing was served on appellant's wife, as provided by *R. S.* 30:4–41. It appears that his wife was present at the final hearing and gave testimony in the matter. We think the lack of notice to her was cured by her appearance. A general appearance of a defendant in a case nullifies any defects in service on him of the summons and complaint. *Smith* v. *Colloty,* 69 *Id.* 365. In principle, that holding seems analogous.

The judgment under review is affirmed, but without costs.

*For affirmance*—The Chancellor, Chief Justice, Case, Bodine, Donges, Perskie, Porter, Colie, Wells, Rafferty, Hague, Thompson, Dill, JJ. 13.

*For reversal*—None.