845 A.2d 139 (2003)
367 N.J. Super. 599
In the Matter of the CIVIL COMMITMENT OF J.H.M.
Superior Court of New Jersey, Appellate Division.
Argued October 16, 2003.
Decided December 9, 2003.
*141 John S. Furlong, West Trenton, argued the cause for appellant J.H.M. (Furlong and Krasny, attorneys; Mr. Furlong, on the brief).
Mary Beth Wood, Deputy Attorney General, argued the cause for respondent State of New Jersey (Peter C. Harvey, Attorney General of New Jersey, attorney; Michael J. Haas, Assistant Attorney General, of counsel; Ms. Wood, on the brief).
Joan D. Van Pelt, Assistant Deputy Public Defender and John Douard, Assistant Deputy Public Defender, argued the cause for amicus curiae Office of the Public Defender (Yvonne Smith Segars, Public Defender of New Jersey, attorney; Ms. Van Pelt and Mr. Douard, on the brief).
Before Judges KING, LINTNER and BILDER.
*140 The opinion of the court was delivered JOKING, P.J.A.D.
This is an appeal from a judgment pursuant to the New Jersey Sexually Violent Predator Act (Act), N.J.S.A. 30:4-27.24 to -27.38, committing J.H.M. to the Northern Regional Unit (NRU) in Kearny. We affirm the commitment which is adequately supported by the record.

I
The Attorney General filed a petition seeking the commitment of J.H.M. under the Act on February 26, 2001. On March 6, 2001 Judge Schlosser granted the State's application for a temporary commitment order authorizing J.H.M.'s transfer to the Northern Regional Unit (NRU). On April 23, 2001 a final hearing regarding the continued commitment of J.H.M. began before Judge Freedman. At the hearing, J.H.M. challenged the constitutionality of the Act.
On June 26, 2001 Judge Freedman ordered the civil commitment of J.H.M. pursuant to the Act. In addition, Judge Freedman ordered a review hearing for June 19, 2002 of J.H.M.'s civil commitment. On appeal, we heard oral arguments regarding J.H.M. and remanded for further consideration in light of the Supreme Court's recent decision in In re the Commitment of W.Z., 173 N.J. 109, 801 A.2d 205 (2002).
On remand, and with the consent of counsel, Judge Freedman considered the matter on the prior record and without further testimony. He entered an order on January 15, 2003 adhering to his prior decision to favor of commitment. J.H.M. again timely filed an appeal from the January 15, 2003 order.

*142 II
When the Attorney General petitioned for the civil commitment of J.H.M. in February 2001, J.H.M. was serving the final month of a three-year sentence imposed in March 1999 for failure to register as a sex offender. The prior sex-related offenses that required J.H.M. to register include J.H.M.'s guilty plea to indecent exposure in 1977 and impairing the morals of a child in 1978. In 1987, J.H.M. was charged with a sexual assault on his wife's niece which took place when she was a student in his karate school he operated at the time. J.H.M. pled guilty to that charge in 1990 and was released in 1995. Approximately 18 months after his release, January 1997, J.H.M. was charged with stalking an eleven-year-old girl. The case went to trial and resulted in a hung jury the first time, and a guilty verdict at the second trial. J.H.M.'s non-sexual offenses include a guilty plea for setting a fire to recover insurance in 1979.

III
J.H.M. raises three points on this appeal:
POINT I: WHETHER PERSONS SUBJECT TO COMMITMENT UNDER SVPA ARE ENTITLED TO MORE CONSTITUTIONAL PROTECTIONS BEYOND THOSE AFFORDED BY THE STATUTE.
POINT II: WHETHER THE TRIAL COURT PROPERLY ARRIVED AT ITS DECISION TO CIVILLY COMMIT J.H.M. UNDER THE SVPA.
POINT III: WHETHER THE TRIAL COURT'S ADMISSION OF PRESENTENCE INVESTIGATION REPORTS FOR NON-SUBSTANTIVE PURPOSES CONSTITUTES AN ERRONEOUS EVIDENTIARY RULING.
The amicus brief discusses the issue raised by appellant in Points I and II, making these contentions:
POINT ICONSTITUTIONAL PROTECTIONS THAT MUST BE AFFORDED TO PERSONS IN COMMITMENT PROCEEDINGS UNDER THE NEW JERSEY SEXUAL VIOLENT PREDATOR ACT.
A. A RESPONDENT HAS BOTH A FEDERAL AND STATE CONSTITUTIONAL RIGHT TO A JURY TRIAL IN A SEXUALLY VIOLENT PREDATOR HEARING TO PROTECT AGAINST IMPROPER INFRINGEMENT OF PERSONAL LIBERTY.
1. The right to a jury trial is protected by the New Jersey Constitution and New Jersey case law.
a. The right of trial by jury existed at common law and is preserved by the New Jersey Constitution of 1776.
2. The right to a jury trial is well-entrenched in SVP statutes.
a. Other states' SVP statutes assert a right to a jury trial.
b. Recognition of the right to a jury trial for SVP cases in New Jersey is consistent with New Jersey's past reliance on the Kansas SVPA.
3. Depriving J.H.M. of a jury trial before confining him at the STU under the SVPA violated his rights under the Equal Protection guarantees of the United States and New Jersey Constitutions.
B. DUE PROCESS REQUIRES THAT THE GROUNDS FOR COMMITMENT AS A SEXUALLY VIOLENT PREDATOR BE PROVEN BEYOND A REASONABLE DOUBT.
POINT IIITHE COURT ERRED IN ADMITTING THE HEARSAY EVIDENCE *143 AS BOTH AS EXHIBITS AND THROUGH THE TESTIMONY OF THE EXPERT WITNESS.
A. Court recordsPresentence Reports and ADTC evaluations.
B. Expert testimony relying on Hearsay in Presentence Reports and other documents.
C. Summary.
We reject appellant's contention that persons subject to commitment under the SVPA are entitled to more constitutional protections beyond those the statute affords. Commitment proceedings for sex offenders are subject both to the Equal Protection and Due Process Clauses of the Fourteenth Amendment, Specht v. Patterson, 386 U.S. 605, 608, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967). There is no equal protection issue where a civil commitment statute treats both sex offenders and other mentally ill persons the same in denying a jury trial. See Jackson v. Indiana, 406 U.S. 715, 723-31, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); compare N.J.S.A. 30:4-27.31 (setting forth the rights of a person subject to involuntary commitment under the SVPA "at a court hearing") and R. 4:74-7(e) (mandating an in-camera hearing for final order of civil commitment).
For a committee to have a right to a trial by jury, "it must arise under a statute or our State Constitution." Ins. Co. of N. Am. v. Anthony Amadei Sand & Gravel, Inc., 162 N.J. 168, 175, 742 A.2d 550 (1999). Article 1, paragraph 9 of the New Jersey Constitution specifically provides: "The Legislature may authorize the trial of the issue of mental incompetency without a jury." It also provides that "[t]he right of trial by jury shall remain inviolate," preserving the right to a jury trial only for those cases where this right existed at the time of the adoption of the State Constitutions in 1776, 1844, or 1947, or where the right was created with the enactment of the State Constitution. Amadei Sand & Gravel, 162 N.J. at 175-76, 742 A.2d 550 (quoting N.J. Const. art. I, § 9). The New Jersey Constitution of 1844 was interpreted to preclude a right to a trial by jury in a commitment hearing, see Stizza v. Essex County Juvenile and Domestic Relations Court, 132 N.J.L. 406, 408-09, 40 A.2d 567 (E. & A.1945), and no such right was created by the current New Jersey Constitution of 1947. See Amadei Sand & Gravel, 162 N.J. at 175-76, 742 A.2d 550.
The New Jersey rule is consistent with that of other jurisdictions. See, e.g., Poole v. Goodno, 335 F.3d 705, 709 (8th Cir.2003) (Minn.law); State ex rel. Pearson v. Probate Court of Ramsey County, 205 Minn. 545, 287 N.W. 297, 303 (1939), aff'd, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940); In re Moulton, 96 N.H. 370, 77 A.2d 26, 28 (1950); State v. Dixon, 238 Or. 121, 393 P.2d 204, 206 (1964). We conclude that there is no right to a jury trial under state law.
We reach the same conclusion regarding the claim that the standard of proof necessary to establish commitment must be beyond a reasonable doubt. New Jersey's use of the "clear and convincing evidence" standard in committing a sex offenders under the SVPA is constitutionally established and sound. The United States Supreme Court has addressed the issue and stated:
We have concluded that the reasonable-doubt standard is inappropriate in civil commitment proceedings because, given the uncertainties of psychiatric diagnosis, it may impose a burden the state cannot meet and thereby erect an unreasonable barrier to needed medical treatment. Similarly, we conclude that use of the term "unequivocal" is not constitutionally required, although the states are free to use that standard. To meet *144 due process demands, the standard has to inform the fact-finder that the proof must be greater than the preponderance-of-the-evidence standard applicable to other categories of civil cases.
[Addington v. Texas, 441 U.S. 418, 432-33, 99 S.Ct. 1804, 1812-13, 60 L.Ed.2d 323, 335 (1979).]
"`[C]ivil commitment,' from a constitutional perspective, nonetheless remains civil." Kansas v. Hendricks, 521 U.S. 346, 380, 117 S.Ct. 2072, 2091, 138 L.Ed.2d 501 (1997) (Breyer, J., dissenting) (citing Allen v. Illinois, 478 U.S. 364, 369-70, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986)). New Jersey's treatment of sex offenders is no different. One of the SVPA's primary objectives is treatment for the sex offender. See Hendricks, 521 U.S. at 381, 117 S.Ct. 2072, 138 L.Ed.2d 501. Sex offenders found eligible for commitment under the SVPA are sent to a secure facility designated for the custody, care, and treatment of sexually violent predators. N.J.S.A. 30:4-27.34; see also N.J.S.A. 30:4-27.26 (defining "treatment team" as "the individuals, agencies or firms which provide treatment, supervision or other services at a facility designated for the custody, care, and treatment of sexually violent predators."). J.H.M. was sentenced, as other sex offenders, to the ADTC and received treatment when sentenced to a prison term prior to his civil commitment.
These same principles prompt rejection of committee's double jeopardy and ex post facto claims. See Hendricks, 521 U.S. at 360-71, 389-90, 117 S.Ct. 2072, 138 L.Ed.2d 501 (there could be no finding of any double jeopardy or ex post facto violation as the Kansas Sexually Violent Predator Act did not establish "criminal proceedings"; thus involuntary confinement pursuant to Act was not punitive).
As we have noted, in W.Z. our Supreme Court enunciated a new standard for commitment under the SVPA and held that "the State must prove by clear and convincing evidence that the individual has serious difficulty controlling his or her harmful sexual behavior such that it is highly likely that the person will not control his or her sexually violent behavior and will reoffend." 173 N.J. at 133-34, 801 A.2d 205 (emphasis supplied). The Court modified our holding in that case, see In re Commitment of W.Z., 339 N.J.Super. 549, 773 A.2d 97 (App.Div.2001), which predated the U.S. Supreme Court's decision in Kansas v. Crane, 532 U.S. 957, 121 S.Ct. 1483, 149 L.Ed.2d 372 (2001). We required the trial judge to find by clear and convincing evidence that the sex offender "has a propensity, inclination or tendency, to commit acts of sexual violence" and is "highly likely" to reoffend. 339 N.J.Super. at 580-81, 773 A.2d 97. The Supreme Court remanded the case to the trial judge to determine whether W.Z.'s mental condition fell within the newly-enunciated standard. 173 N.J. at 134, 801 A.2d 205.
J.H.M. next argues that the Act is punitive in nature because the committees are under the control of the Department of Corrections (DOC). We have found that although the committees were subject to certain restraints and restrictions, the dual conditions required not simply a prison setting but also a therapeutic environment. In the Matter of the Commitment of D.L. & C.M., 351 N.J.Super. 77, 80-81, 797 A.2d 166 (App.Div.2002); N.J.S.A. 30:4-27.34(b). The DOC is responsible for the operation of the facility while the Division of Mental Health Services in the Department of Human Services is responsible for providing and facilitating the treatment for the residents. Ibid. "The treatment program is designed to provide comprehensive treatment services and is staffed by psychologists, psychiatrists, social workers, substance abuse counselors and other staff *145 members with specialized training in the assessment and treatment of sexual deviance and personality disorders." In re M.G. & D.C., 331 N.J.Super. 365, 373, 751 A.2d 1101 (App.Div.2000).
The role of the DOC in providing the housing for individuals committed under the Act does not necessarily establish a punitive statute. J.H.M.'s assertion of secure prison-like conditions is not the clear proof that the statutory scheme is so punitive as to render it a criminal statute. The intent and legislative purpose of the Act, admittedly a dual purpose, secure confinement and treatment, does not render the SVPA unconstitutionally punitive per se.
J.H.M. also argues that the Act is punitive in nature because certain aspects of the statute preclude committees from receiving any meaningful and effective treatment because the treatment team acts as both the psychiatrist and the entity which recommends his commitment. J.H.M. contends that, as a result, this dual role prevents committees from receiving meaningful and effective treatment.
Individuals are civilly committed under the Act because they pose a danger to the public health and safety due to their behavior. Hendricks, 521 U.S. at 357, 117 S.Ct. 2072, 138 L.Ed.2d 501. In particular, the New Jersey Legislature specified the need to protect society from sexually violent predators. N.J.S.A. 30:4-27.25. The psychiatrist on the treatment team aids the court in making specific determination about the committee's condition. N.J.S.A. 30:4-27.30(b). The psychiatrist's testimony concerns "the clinical basis for commitment drawn from a personal examination of the patient." In re J.P., 339 N.J.Super. 443, 461, 772 A.2d 54 (App.Div.2001). The role of the psychiatrist on the treatment team is to ensure that J.H.M. has been provided with the proper treatment and to aid in his recovery thereby helping the committee and protecting the public.
Due to the purpose of the Act to help the committee and protect society, "common notions of fairness clearly compel at least limited disclosure of otherwise confidential communications." State v. McBride, 213 N.J.Super. 255, 270, 517 A.2d 152 (App.Div.1986); see also N.J.S.A. 45:14B-28. Pursuant to the Act, the psychiatrist provides information necessary to determine if particular individuals should be committed, and if committed, must decide when the committee has fulfilled the treatment requirements and is ready for discharge. The psychiatrist is the only person with the training as well as the knowledge from personal interviews with the committee, or potential committee, to determine if the commitment is necessary, the level of treatment needed, and when recovery occurs. The committee may present medical evidence on his prognosis and potential release from confinement.
J.H.M. asserts that the indefinite length of his commitment creates a punishment aspect of the Act, thereby making it punitive in nature. This claim has been addressed and dismissed in Hendricks, where the U.S. Supreme Court stated, "Far from any punitive objective, the confinement's duration is instead linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others." Hendricks, 521 U.S. at 363, 117 S.Ct. 2072, 138 L.Ed.2d 501. In addition, commitment pursuant to SVPA is only potentially indefinite, with one year being "[t]he maximum amount of time an individual can be incapacitated pursuant to a single judicial proceeding." Id. at 363, 117 S.Ct. 2072. If the State wishes to continue to hold the committee for additional time, the State must again prove "by clear and convincing evidence that the person *146 needs continued involuntary commitment as a sexually violent predator." N.J.S.A. 30:4-27.32. "This requirement... demonstrates that [New Jersey] does not intend an individual committed pursuant to the Act to remain confined any longer than he suffers from a mental abnormality rendering him unable to control his dangerousness." Hendricks, 521 U.S. at 364, 117 S.Ct. 2072, 138 L.Ed.2d 501.

IV
We are satisfied that the record amply supports the commitment under the SVPA for the reasons given by Judge Freedman in his extensive opinion of June 26, 2001, enhanced by the finding after remand that the State's evidence "met by clear and convincing evidence the standard enunciated by the Supreme Court in W.Z." The 1990 sexual assault constituted a predicate offense. The balance of J.H.M.'s record reinforces the judge's conclusion. His pedophilia and personality disorder is well documented. His predictably dangerous nature is not mere suspicion.

V
We next address the third point raised by the committee. He objects to the judge's admission of hearsay evidence within the criminal presentence reports and ADTC termination evaluations, arguing that expert testimony may not be used as a means of introducing otherwise inadmissible hearsay. The judge ruled these documents were hearsay and inadmissible as substantive evidence but were admissible as evidence relied upon by each expert to permit an evaluation of the expert's testimony.
Evidentiary decisions of a trial judge are reviewed utilizing the abuse of discretion standard. Pressler, Current N.J. Court Rules, comment 2.4 on R. 2:10-1 (2003) (citing State v. Brown, 170 N.J. 138, 147, 784 A.2d 1244 (2001)). While out-of-court statements used to prove the truth of the matter asserted are inadmissible hearsay, see N.J.R.E. 802, an expert who substantially relies on hearsay evidence for his or her opinion may testify at trial as long as the hearsay information "was of a type `reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'" N.J.R.E. 703; see Biunno, Current N.J. Rules of Evidence, comment 6 on N.J.R.E. 703 (Gann 2002) (citing Corcoran v. Sears Roebuck and Co., 312 N.J.Super. 117, 134-36, 711 A.2d 371 (App.Div.1998)).
N.J.R.E. 703 specifically provides that facts or data "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject ... need not be admissible in evidence." "[H]earsay statements upon which an expert relies are ordinarily admissible provided they are of a type reasonably relied upon by experts in the field." State v. Vandeweaghe, 351 N.J.Super. 467, 480, 799 A.2d 1 (App.Div.2002), affirmed, 177 N.J. 229, 827 A.2d 1028 (2003). "However, hearsay is not admissible substantively as establishing the truth of the statement." Ibid. A psychiatrist is permitted to testify about a defendant's prior criminal history in order to offer an opinion about a defendant's mental condition. State v. Eatman, 340 N.J.Super. 295, 302, 774 A.2d 571 (App.Div.2001), certif. denied, 170 N.J. 85, 784 A.2d 718 (2001).
Here, the introduction of the presentence reports was proper since such evidence was of a type reasonably relied upon by mental experts in formulating their evaluations of an individual's mental condition. "An expert is permitted to rely on hearsay information in forming his opinion concerning the defendant's mental state." Eatman, 340 N.J.Super. at 302, 774 A.2d 571. Unfortunately, W.Z., the seminal case in New Jersey dealing with *147 civil commitment under the SVPA, does not offer any direct guidance with respect to this specific evidentiary issue. Nonetheless, W.Z. does stress the importance of an expert's evaluation of a defendant's mental condition for purposes of civil commitment under the SVPA such that a mental expert should be permitted to rely on hearsay information. See W.Z., 173 N.J. at 127, 801 A.2d 205 (stating that SVPA requires evidence of past sexually violent behavior and a present mental condition to determine if the individual needs to be incapacitated in order to prevent the individual from reoffending).
Moreover, Dr. Donna LoBiondo specifically testified during the course of the hearing that the purpose of reviewing the presentence reports was to obtain a history of what happened through the years, to see how the people involved in the offenses viewed the offenses, and to get a sense of the way J.H.M. responded to these situations over time. It is important to observe that the presentence reports were not the only means by which information was acquired about J.H.M.'s history of offenses. Additional sources of admissible evidence, such as the interviews conducted and J.H.M.'s previous criminal convictions also existed to provide a basis for substantively admitting evidence of J.H.M.'s convictions.
While Eatman cautions against allowing the expert witness "to serve as a conduit for alerting the jury to evidence it would not otherwise be permitted to hear," 340 N.J.Super. at 302, 774 A.2d 571, this does not pose as serious a concern in this case since J.H.M.'s hearing was not before a jury. The absence of a jury significantly reduces the risk that an expert's reliance upon the reports would be misunderstood. Furthermore, the trial judge clearly announced that the presentence reports were not admitted as substantive evidence. In accordance with the court's directive in Vandeweaghe, the judge clearly stated that the presentence reports were only admissible as evidence of what the experts relied upon in order to come to their conclusions. Vandeweaghe, 351 N.J.Super. at 480, 799 A.2d 1 (directing the judge to advise "the jury that it should not consider the hearsay statement as substantive evidence...")(internal quotations omitted). Thus, the trial judge's ruling with respect to the presentence reports fails to rise to the level of a clear error of judgment or abuse of discretion and does not provide a valid ground for reversal.
Affirmed.