**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1807-16T5

IN THE MATTER OF THE
CIVIL COMMITMENT OF
I.O., SVP-440-06.

_____

Argued March 22, 2018 — Decided July 9, 2018

Before Judges Haas and Rothstadt.

On appeal from Superior Court of New Jersey,
Law Division, Essex County, Docket No. SVP-
440-06.

Joan D. Van Pelt, Designated Counsel, argued
the cause for appellant I.O. (Joseph E.
Krakora, Public Defender, attorney).

Lauren S. Kirk, Deputy Attorney General,
argued the cause for respondent State of New
Jersey (Gurbir S. Grewal, Attorney General,
attorney).

PER CURIAM

I.O. appeals from the October 26, 2016 order of the Law

Division, continuing his commitment to the Special Treatment Unit

(STU), the secure facility designated for the custody, care and

treatment of sexually violent predators pursuant to the Sexually

Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. For the reasons that follow, we affirm.

At the time of his review hearing, I.O. was approximately fifty-eight years old. The predicate offenses for which I.O. was committed to the STU arose out of his 1992 sexual assault upon an eleven-year-old girl that he kissed and fondled on her buttocks. On another occasion, I.O. exposed himself to the victim and her friends. At the time he committed these offenses, I.O. was out on bail in connection with pending charges from 1991 for two counts of sexual assault, criminal sexual contact, and aggravated sexual assault committed upon a seventeen-year-old and a six-year-old. Following his convictions, he received a seventeen-year aggregate sentence and I.O. was committed to the Adult Diagnostic Treatment Center (ADTC). In 2006, he was committed to the STU, after he had been terminated from the ADTC and transferred to state prison, and his commitment continued following periodic review hearings. See In re Civil Commitment of I.O., No. A-4270-09 (App. Div. Sept. 17, 2010).

The most recent review, which is the subject of this appeal, was conducted by Judge Philip M. Freedman on October 18 and October 26, 2016. At the hearing, the State relied upon the expert testimony of psychiatrist Dr. Indra Kumar Cidambi and psychologist Dr. Rosemarie Vala Stewart, who is a member of the STU's Treatment

Progress Review Committee (TPRC). Both experts opined that I.O.'s risk to sexually reoffend remained high. After interviewing I.O. and reviewing previous psychiatric evaluations, STU treatment records, and related documents, Stewart and Cidambi prepared reports, which were admitted into evidence. Various treatment notes and other records were also admitted into evidence. I.O. also testified at the hearing.

Cidambi concluded that I.O. met the criteria of a sexually violent predator and was "highly likely to sexually re-offend if not confined in a secure facility for control, care and treatment" because he has not mitigated his risk. Based on I.O.'s "index offense and his admission to other uncharged offenses, [and his] report[] that he was still attracted to young children[,]" Cidambi diagnosed him with pedophilic disorder, sexually attracted to females, non-exclusive type. She testified that she also diagnosed I.O. with other specified paraphilic disorder, non-consent, "[f]or sexually offending against victims who cannot consent[.]" She testified that I.O. "meet[s] the criteria for frotteuristic disorder" because he has "a history of rubbing against adult women in a crowded area, say a subway station, and touching and rubbing against non-consenting persons[.]"

According to Cidambi, I.O. also has traits of antisocial personality disorder based upon his history of "sexually

3

offending" and his "fail[ure] to conform to social norms[,] . . . disregard for the safety of others, law-breaking behavior, [and] impulsive [behavior], [while showing] no remorse." She pointed to I.O.'s infractions while at the STU, which included I.O. being "placed on [modified activities program status] several times[,] . . . one time for [making] threat[s] and then he has had pornographic material in his possession." She stated that having traits of antisocial personality disorder combined with the sexual pathologies she diagnosed I.O. with "increases the risk of reoffending. And it also provides for impulsivity and disregard for the safety of others[.]"

Further, Cidambi found evidence of I.O. having cocaine use disorder in a controlled environment, opioid use disorder in a controlled environment, and cannabis use disorder in a controlled environment based upon his history of substance abuse. She testified that adding the substance abuse problems to I.O.'s already increased risk, "definitely increases by increasing the disability -- disinhability [sic] and the impulsivity and makes them take -- make poor judgment and reoffend." According to Cidambi, these conditions do not spontaneously remit, and it is only "through treatment [that] one can learn to control the impulses caused by these disorders[.]"

A-1807-16T5

She gave I.O. a score of five on the Static-99R,[1] indicating an above average risk to sexually reoffend. However, she opined that his "score underestimates his current risk to sexually re-offend[.]" She concluded that there was a "high risk" that I.O. would reoffend, based upon his "lack of behavioral control," lack of progress in treatment, and delusion "about the offenses that he has done" to the point that "he doesn't consider himself as a sex offender. And he still has this arousal towards young girls[.]"

Stewart testified that she along with the other members of the TPRC that evaluated I.O. unanimously recommended in their report that I.O. "remain in phase two of treatment[,]" because although I.O. "does attend his process group [and] does attempt modules, . . . he struggles to address core issues." She noted the several modules and treatment groups I.O. has failed, or had to repeat, as well as the ones he withdrew from.

---

[1] "The Static-99 is an actuarial test used to estimate the probability of sexually violent recidivism in adult males previously convicted of sexually violent offenses." In re Civil Commitment of R.F., 217 N.J. 152, 164 n.9 (2014) (citation omitted). Our Supreme "Court has explained that actuarial information, including the Static-99, is 'simply a factor to consider, weigh, or even reject, when engaging in the necessary factfinding under the SVPA.'" Ibid. (quoting In re Commitment of R.S., 173 N.J. 134, 137 (2002)).

Describing her interview with I.O., Stewart stated, "There was a significant amount of hostility . . . . [I.O.] talked about anger at the system, anger at the institution, anger at this writer for previous evaluations, talking about . . . wanting to shoot at -- shoot everyone." However, according to Stewart, I.O. "actually said . . . that he is here because he doesn't know if he would offend if he would leave." In discussing his plans if he were released, I.O. told Stewart that he intended to leave the country to go to Venezuela, which according to Stewart, would prevent any possible "mitigation of risk" that supervision or any conditions placed on his discharge would provide.

Stewart diagnosed I.O. with "[p]edophilic [d]isorder (sexually attracted to females, nonexclusive type)[, o]ther [s]pecified [p]araphilic [d]isorder (non-consent and hebephillia)[, f]rotteuristic [d]isorder (in a controlled environment)[, o]ther [s]pecified [p]ersonality [d]isorder (antisocial, paranoid, and borderline features)[,]" as well as substance abuse disorders. She testified that I.O.'s "risk is exacerbated with the personality diagnosis, especially including antisocial features, because a person doesn't feel constrained by concern for others, by the law, by authority, and . . . feels freer and without conscience to act on their urges and impulses." She added that his substance abuse "can disinhibit [him] and it

6

can impair [his] judgment[,]" which worsens the problem. Stewart concluded that I.O. did not have "enough treatment to adequately be able to control [his] impulses[,]" and that "these conditions [do not] spontaneously remit[.]" Therefore, "if not recommitted to the STU for further treatment[,]" she found I.O.'s "risk to sexually reoffend" to be "high."

I.O. testified[2] that his sexual offenses were attributable to a head injury that he suffered in a motor vehicle accident. He denied having any sexual contact with a six-year-old and explained that he only pled guilty to that offense because of the ineffective assistance of his counsel. He admitted to having sex with a seventeen-year-old, but stated that she initiated the interaction. I.O. then spoke at length regarding his sexual offenses against an eleven-year-old, claiming that he was falsely accused of his offenses against her, despite having pled guilty to them as well.

In an oral decision placed on the record on October 26, 2016, Judge Freedman detailed I.O.'s prior criminal history and events since his original admission to the STU, recounted the testimony before him, and detailed I.O.'s treatment record at the STU. He found that I.O. "version [of the events resulting in his convictions] was not credible" because "[h]e pled guilty. He

_____

[2] I.O. began his testimony by requesting a jury trial, which the judge denied.

admitted to the police, [and] gave a detailed statement, and his story is incredible[.]" According to the judge, I.O. had also previously "made many admissions over the years consistent with his offending in these cases." The judge noted that he found both of the State's experts to be credible.

After articulating the applicable legal principles, Judge Freedman determined that there was clear and convincing evidence that I.O. has been convicted of sexually violent offenses, which bring him within the purview of the SVPA, and that he

> suffer[s] from . . . mental abnormalities in
> the form of pedophilia and a paraphilia, as
> well as a personality disorder that, in
> combination, these affect him emotionally,
> cognitively and volitionally to such a degree
> as to predispose him to engage in acts of
> sexual violence, as his record and his many
> admissions that were relied on by these
> doctors show, and that, if released, he would
> have serious difficulty controlling his
> sexually violent behavior and will in the
> reasonably foreseeable future . . . be highly
> likely to engage in acts of sexual violence.

On the same date, Judge Freedman entered a memorializing order continuing I.O.'s commitment, and this appeal followed.

On appeal,[3] I.O.'s arguments are twofold. He contends that he "should have been granted a jury trial and second, that the

---

[3] By agreement of the parties and with the permission of the court, the appeal was argued without briefs. We summarize the points raised by appellant based upon the presentation at oral argument.

State failed to meet its burden that he continued to be highly likely to re-offend as a sexually violent predator" because "the State's evaluators and the [trial judge] in turn failed to consider his good behavior in the institution and the severity of his medical condition as it impacts on his likelihood to re-offend."

We conclude from our review that I.O.'s arguments "are without sufficient merit to warrant discussion in a written opinion[.]" R. 2:11-3(e)(1)(E). Suffice it to say that we have previously determined that there is no right to a jury trial in a SVPA commitment hearing, see In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 607 (App. Div. 2003), and I.O. has not persuaded us to abandon our precedent.

Turning to I.O.'s second contention, and considering our "extremely narrow" scope of review, which requires that we give "special deference" to a trial judge's determinations in these matters, R.F., 217 N.J. at 174 (citations omitted), we discern no "clear mistake[,]" id. at 175 (citations omitted), in Judge Freedman's determination that the State proved by clear and convincing evidence that I.O. suffered from a mental abnormality or personality disorder that predisposed him to sexual violence and warranted his commitment. We affirm substantially for the reasons expressed by Judge Freedman in his thorough oral decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1807-16T5