# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2574-15T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF T.W., SVP-131-00.

Argued October 2, 2018 – Decided November 2, 2018

Before Judges Rothstadt and Gilson.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-131-00.

Susan Remis Silver, Assistant Deputy Public Defender, argued the cause for appellant T.W. (Joseph E. Krakora, Public Defender, attorney; Susan Remis Silver, on the brief).

Stephen J. Slocum, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, on the brief).

PER CURIAM

T.W. is a sixty-three-year-old man who has been civilly committed since 2000 under the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. He appeals from judgments entered on January 27, 2016 and October

17, 2017, following his most recent civil commitment review hearing. T.W. argues that those two judgments relied on a hearsay statement by his wife, which has now been recanted, and that the State's experts relied on hearsay regarding sexual assault charges that had been dismissed. Because the current record does not adequately address whether and to what extent the most recent judgments were based on hearsay, including the wife's statement, and whether the wife's statement is still reliable, we remand for a re-hearing of the civil commitment review.

I

In July 1974, T.W. was arrested and charged in connection with a series of attacks against six different women committed between March and May 1974. All six of those events involved forced entries into homes. In two of the situations, T.W. forcefully raped two victims, and in three different situations he physically assaulted three other victims. T.W. pled guilty to two counts of rape, attempted rape, three counts of breaking and entering, and assault. He was sentenced to thirty years in prison. In January 1983, T.W. was paroled.

In September 1983, he was arrested and charged with three attacks on three separate women committed in August 1983. The State dismissed the sexual assault charges related to two of the attacks. Thereafter, in 1984, T.W.

2

was convicted of robbery stemming from charges that he attacked a woman in a parking lot and unsuccessfully tried to pull her into a stairwell. The victim escaped, and T.W. stole her purse. He was sentenced to twenty years in prison.

T.W. was first civilly committed under the SVPA in 2000. He has had a series of review hearings, and his commitment has been continued. We have reviewed and affirmed at least three of those judgments of continued civil commitment. In re Civil Commitment of T.W., No. A-2712-11 (App. Div. June 15, 2012); In re Civil Commitment of T.Q.W., No. A-3904-04 (App. Div. Nov. 4, 2005); and In re Civil Commitment of T.Q.W., No. A-3360-03 (App. Div. Oct. 13, 2004).

At a review hearing conducted on January 7, 2004, T.W.'s wife testified. The wife was apparently called by T.W.'s counsel to explain that if released, T.W. would be living with her. She testified that she had met T.W. in 1998 while he was incarcerated and that they had married in 2002. The wife also explained that she was aware of T.W.'s criminal history because T.W. had told her about his past criminal conduct, including that he had raped women.

On cross-examination by a deputy attorney general, the following questions and answers were given:

> Q. You say that [T.W.] has discussed his crimes with you in detail.

A-2574-15T5

A.   Absolutely, yes.

Q.   Has admitted to you that he raped in 1983?

A.   Yes.

The judge conducting the review hearing then followed up and the following exchange took place:

Q.   Ms. [W.], do I understand you correctly that you have heard from [T.W.] that he raped in 1983?

A.   Yes.

Q.   He has acknowledged rapes in 1983 to you?

A.   Yes.

T.W.'s most recent review hearing was held on January 11, 2016. At that hearing, the State presented expert testimony from a psychologist, Dr. Christine Zavalis, and a psychiatrist, Dr. Howard Gilman. T.W. called psychologist Dr. Barry Zakireh.

Both of the State's experts discussed T.W.'s criminal history, including his convictions for rapes in 1974 and their understanding of the three offenses in 1983. The State's experts pointed out that T.W. was only convicted of robbery in 1983, and they both noted that T.W. denied that the robbery was sexual in nature. Nevertheless, in offering their opinions as to T.W.'s mental status and

likelihood of committing sexual assaults if released, the State's experts both discussed and analyzed the 1983 charges as sexual assaults. In so doing, they referenced the criminal record of the 1983 incidents. Both experts also testified that they relied on the type of information normally relied on by experts in their field.

Dr. Zavalis then diagnosed T.W. as suffering from a paraphilic disorder (non-consent), voyeuristic disorder, and antisocial personality disorder. Dr. Gilman diagnosed T.W. with sexual sadism, voyeuristic disorder, and antisocial personality disorder. Both doctors opined that T.W. would likely pose a high risk of committing a sexually violent act if released.

In contrast, Dr. Zakireh, T.W.'s expert, opined that T.W. was not highly likely to reoffend if released in 2016. Dr. Zakireh diagnosed T.W. with antisocial personality disorder and voyeuristic disorder. Dr. Zakireh, however, noted that T.W. was over fifty years of age and in poor physical health. Thus, he reasoned that T.W. had a low risk of reoffending.

The trial court issued its initial decision on January 27, 2016, and explained the reasons for its ruling on the record. The court relied on the testimony given by the State's experts and rejected the testimony offered by T.W.'s expert. In considering the use of the 1983 offenses as sexual in nature,

the court reviewed the record of the testimony of T.W.'s wife in 2004. Specifically, the court read into the record the transcripts of the wife's testimony given at the 2004 recommitment hearing, when the wife testified that T.W. had admitted to her that he had engaged in "rapes" in 1983. The court also noted that, under certain circumstances, charges that do not result in convictions can be used clinically by experts.

The court then credited the State's experts' diagnosis of paraphilic disorder (non-consent) and antisocial personality disorders. It also accepted the State's experts' opinions and found that T.W. still had a highly likely risk of committing a sexually violent offense if released. Thus, the court found that the State had proven each of the elements required by the SVPA by clear and convincing evidence. Accordingly, on January 27, 2016, the court entered a judgment continuing T.W.'s commitment.

T.W. appealed from the January 27, 2016 judgment. While his appeal was pending, in July 2017, T.W. moved to supplement the record with a certification from his wife. The certification was dated September 15, 2016, and in it the wife recanted her testimony from the 2004 hearing. Specifically, the wife certified that T.W. had never told her he committed any rape in 1983. She also certified that she had been confused by the questioning in 2004. In August 2017,

we remanded this matter and directed the trial court to consider the wife's certification and issue a new decision.

On remand, the court did not conduct a new hearing. Instead, because the court learned that T.W.'s wife had since passed away, the court decided a hearing was not necessary. The court, therefore, went on the record on October 17, 2017, to address the remand. Apparently, neither the State nor counsel for T.W. were given notice of the trial court's decision not to conduct a hearing. Instead, the court went on the record without any appearances and explained that it would issue a new judgment continuing T.W.'s civil commitment.

The court gave two bases for that decision. First, the court explained that it was not convinced that the recanting certification was reliable and, therefore, the testimony from the 2004 hearing was still valid. Second, the court reasoned that the State's experts who testified at the January 11, 2016 review hearing had not relied on the wife's statement concerning T.W.'s admission of rapes in 1983. The court pointed out that both of the State's experts understood that T.W. was denying that he had engaged in any sexual assaults in 1983, and they were relying on the criminal record rather than the wife's statement. Accordingly, on October 17, 2017, the trial court issued a new judgment continuing T.W.'s civil commitment to the Special Treatment Unit.

II

T.W. now appeals from both the January 27, 2016 and the October 17, 2017 judgments. He makes four arguments: (1) his most recent commitment was based on inadmissible and incompetent hearsay; (2) the trial court's decision on remand is based on the wife's inadmissible and unreliable hearsay and the State's experts also relied on inadmissible hearsay from the criminal record; (3) the commitment judgment should be reversed because the State's experts offered only net opinions; and (4) the State introduced no evidence that T.W. has a current mental abnormality or personality disorder that makes him a current risk of being highly likely to sexually offend.

The Legislature's purpose in enacting the SVPA was "to protect other members of society from the danger posed by sexually violent predators." In re Civil Commitment of J.M.B., 197 N.J. 563, 570-71 (citing N.J.S.A. 30:4-27.25). Thus, the SVPA provides for the involuntary commitment of any person found by the court to be a sexually violent predator within the meaning of the statute. N.J.S.A. 30:4-27.32(a). The statute defines a sexually violent predator as:

> [A] person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense . . . and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts

of sexual violence if not confined in a secure facility for control, care and treatment.

[N.J.S.A. 30:4-27.26.]

To justify commitment of an individual under the SVPA, the State must prove "the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." In re Commitment of W.Z., 173 N.J. 109, 132 (2002). The court must consider the individual's "present serious difficulty with control over dangerous sexual behavior" and the State must establish "by clear and convincing evidence . . . that it is highly likely that the person . . . will reoffend." Id. at 132-34.

Our review of a trial court's decision in a commitment proceeding under the SVPA is "exceedingly narrow." In re Civil Commitment of W.X.C., 407 N.J. Super. 619, 630 (App. Div. 2009) (first citing In re Civil Commitment of J.M.B., 395 N.J. Super. 69, 89 (App. Div. 2007), aff'd, 197 N.J. 563 (2009); then citing In re Civil Commitment of V.A., 357 N.J. Super. 55, 63 (App. Div. 2003)), aff'd, 204 N.J. 179 (2010). Further, we "must give the 'utmost deference' to the reviewing judge's determination of the appropriate balancing of societal interest and individual liberty." Ibid. (quoting In re Commitment of J.P., 339 N.J. Super. 443, 459 (App. Div. 2001)). Modification is only proper on appeal

when the record reveals a clear abuse of discretion. Ibid. (citing J.M.B., 395 N.J. Super. at 90). Accordingly, a reviewing court has a responsibility to "canvass the record, inclusive of the expert testimony, to determine whether the findings made by the trial judge were clearly erroneous." Ibid. (citing In re D.C., 146 N.J. 31, 58-59 (1996)).

At the commitment hearing, the State must establish three elements: (1) that the individual has been convicted of a sexually violent offense; (2) that he or she suffers from a mental abnormality or personality disorder; and (3) that as a result of his or her psychiatric abnormality or disorder "it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend." In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014) (quoting W.Z., 173 N.J. at 130).

Here, T.W.'s principal argument is that the most recent judgments relied on the inadmissible and unreliable hearsay testimony of his now-deceased wife. T.W. also argues that the State's experts based their opinions on hearsay consisting of police reports, victim statements, and other items from the criminal record concerning the dismissed sexual assault charges from 1983.

In opposition, the State contends that it did not use the wife's testimony to meet its burden at the January 11, 2016 hearing. It also argues that experts are

permitted to rely on hearsay information, such as presentence reports, police reports, and prior psychological evaluations, in forming opinions concerning an individual's mental status because such evidence is of the type that experts in that field normally rely upon.

In certain circumstances, hearsay may be relied upon by experts if the information is of a type "reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." State v. Torres, 183 N.J. 554, 576 (2005) (quoting N.J.R.E. 703). For example, hearsay from presentence reports can form the basis of an expert opinion because "such evidence [is] of a type reasonably relied on by mental experts in formulating their evaluations of an individual's mental condition." In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 612 (App. Div. 2003).

Nevertheless, due process liberty interests can come into play. Therefore, a court must assesses the reliability of the expert's testimony. "[T]here is a tipping point where due process is violated by the use of hearsay." In re Commitment of G.G.N., 372 N.J. Super. 42, 58 (App. Div. 2004). If an "unproven allegation . . . provide[s] a significant building block" in an expert opinion, "it would present a troubling issue since significant state action, such as SVPA commitment, cannot and should not be based on unproven allegations

of misconduct." In re Civil Commitment of A.E.F., 377 N.J. Super. 473, 490 (App. Div. 2005). Accordingly,

> [w]e expect the SVPA hearing judges to carefully scrutinize [prior clinical evaluation material] so that its use is not abused. And the same may be said of factual information concerning the committee's offenses contained in [presentence investigation reports] or in medical evaluations, where the committee denies that the crime took place as reported. The fact that the testifying expert parrots Rule 703, that such hearsay is of a type "reasonably relied upon" by experts in their field, does not shield all such hearsay from scrutiny. . . . Important rights are at stake and judicious use of hearsay must be the standard.
>
> [Id. at 492-93 (citation omitted).]

The current record does not allow us to adequately review what the State's experts relied upon and the basis for their testimony. At the review hearing conducted in January 2016, both of the State's experts made reference to and relied on events in 1983. In accepting that testimony, the trial court relied on the wife's testimony given in 2004. Because there was no evidentiary hearing on the remand, we cannot determine whether the State's experts relied on the now-deceased wife's testimony from 2004 or on other independent information. Moreover, if the State's experts did not rely on the wife's testimony, then the trial court needs to assess the factual basis for their testimony without regard to the wife's hearsay. Such an assessment has not been made because, as we point

out, the trial court relied on the wife's testimony in finding the experts' testimony reliable. Accordingly, we remand for a re-hearing.

At the re-hearing, the State is directed to submit new expert reports addressing whether T.W. continues to suffer from a mental abnormality or personality disorder and whether he cannot control his sexually violent behavior and would be highly likely to reoffend if released. The experts will need to detail whether they are relying on the statement made by the wife concerning T.W.'s admission that he committed "rapes" in 1983. If the experts are not relying on that information, they need to identify the specific information they are relying on concerning the events in 1983. T.W. should then be allowed to respond, including addressing why the wife's recanting certification, dated September 15, 2016, makes her testimony from 2004 unreliable.

On a more complete record, the trial court can then determine (1) whether and to what extent the wife's testimony from 2004 is still reliable in light of her certification from 2016, and (2) whether there is an independent, reliable basis to accept the experts' testimony concerning the events in 1983 if they are not relying on the wife's testimony.

Thus, this matter is remanded for a re-hearing. We further direct that the hearing be conducted within sixty days of the date of this opinion and that a new judgment be entered no later than ninety days from the date of this opinion.

Remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION