# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1970-19

IN THE MATTER OF THE
CIVIL COMMITMENT OF
J.L.N., SVP-197-01.

_____

Submitted March 1, 2021 – Decided March 25, 2021

Before Judges Sabatino and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-197-01.

Joseph E. Krakora, Public Defender, attorney for appellant (Patrick Madden, Assistant Deputy Public Defender, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent State of New Jersey (Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

J.L.N. appeals the trial court's post-hearing order continuing his civil commitment to the Special Treatment Unit ("STU") under the Sexually Violent

Predator Act ("SVPA"), N.J.S.A. 30:4-27.24 to -27.38, as a sex offender who continues to endanger the community. We affirm.

Appellant was first civilly committed to the STU in 2001 after serving his criminal sentences for two sexual assaults he committed on women, one of whom was a minor, in 1982 at the age of twenty. He was conditionally discharged from the STU in September 2004, but recommitted in April 2005 after a domestic violence incident with his then-wife and also admitting to hiding information and lying to his treatment providers.

J.L.N. unsuccessfully contested his STU placement in a series of appeals in 2006, 2007, 2008, 2010, 2011, and 2012.[1] He was conditionally discharged again in October 2014. He then committed domestic violence against his next wife in March 2017 and was accordingly sent back to the STU.

J.L.N. was conditionally discharged from the STU a third time in February 2018. However, he was arrested in July 2019 after another domestic violence incident in which he grabbed and threatened his adult girlfriend in the presence

---

[1] In re Commitment of J.L.N., No. A-6425-04 (App. Div. Nov. 21, 2006); In re Commitment of J.L.N., No. A-4902-06 (App. Div. Dec. 28, 2007); In re Commitment of J.L.N., No. A-5336-07 (App. Div. Nov. 19, 2008); In re Commitment of J.L.N., No. A-2127-09 (App. Div. June 2, 2010); In re Commitment of J.L.N., No. A-2251-10 (App. Div. April 29, 2011); In re Commitment of J.L.N., No. A-3331-11 (App. Div. Oct. 22, 2012).

A-1970-19

of her seven-year-old and twelve-year-old daughters.  During this incident the girlfriend brandished a knife in an effort to fend off J.L.N., and she locked herself and her daughters in the bathroom until the police came.[2]  When investigating the incident, the police found J.L.N. in possession of images of a seventeen-year-old girl (who was said to be his stepsister) and videos showing how to make homemade guns and disarm law enforcement officials.

Following the 2019 incident, the State moved to re-commit J.L.N. again to the STU.  After the State filed the application, J.L.N. absconded from parole authorities for six weeks until he was apprehended.  He was then evaluated by two experts for the State: Dr. Roger Harris, a psychiatrist, and Dr. Rosemarie Vala Stewart, a psychologist, both of whom opined that J.L.N. has a diagnosis that includes antisocial personality disorder.  They both attested that he is at "high risk" for committing another sexual offense.

During his expert testimony, Dr. Harris acknowledged that none of J.L.N.'s conditional discharge violations escalated to sexual assault but explained the nexus leading to sexual re-offense:

> [J.L.N.] is not able to tolerate . . . an intimate partner
> rejecting him.  Their attempts at separating from him
> . . . fuels him to the point of becoming desperate and

---

[2]  The briefing in this civil appeal does not state the 2019 incident resulted in a criminal conviction.

A-1970-19

attempting to control the women . . . by physical and emotional means. He is unable to self-regulate himself. He is unable to allow the individual . . . to create more distance from himself and that then serves as the springboard for his becoming physically violent and in 1982 sexually violent as well.

When questioned by the trial court on this issue, Dr. Harris further explained:

> [T]he 1982 offense serves as the template. . . . K.S. has broken off with [J.L.N.]. [J.L.N.] could not tolerate that, breaks into her house, threatens her, . . . and then attempts to reestablish the relationship. He then sexually assaults her. The . . . pattern is the same with each subsequent woman who is attempting to separate, to challenge [J.L.N.], and to distance herself from him. And he does poorly tolerated [sic] it. He becomes suspicious of them and then ultimately becomes violent towards them.
>
> I think that the future risk is too great . . . for him to sexually assault someone, in spite of [the fact] that these three women were only physically assaulted, and not sexually assaulted as the psychological pattern is . . . indelible.

J.L.N. was also evaluated by a defense psychologist, Dr. Christopher P. Lorah, who contended that although J.L.N. has continued to engage in improper behavior, he is presently not at a high risk of committing another sexual offense. Dr. Lorah recommended that J.L.N. be allowed to remain on conditional discharge, with stringent conditions such as monitoring his computer and phone.

A-1970-19

The case was heard by Judge Philip M. Freedman over two hearing dates. J.L.N. did not testify but the three experts did.

The judge concluded in his January 3, 2020 oral decision that the State had shown by clear and convincing evidence that J.L.N. is at high risk to commit another sexual offense, even though he is now in his late fifties and his sexual crimes were committed almost forty years ago. The judge was especially concerned with J.L.N. absconding for six weeks. The judge revoked the conditional discharge and required J.L.N. to be confined at the STU.

J.L.N. now appeals, relying on both a pro se brief and a supplemental brief from his assigned attorney. Among other things, he argues the evidence at the hearing was not sufficient to satisfy the elements of the SVPA. He emphasizes his 2019 domestic altercation involved no sexual violence or threats, and claims his girlfriend was the aggressor in the incident.

Appellant also contends the judge unfairly discounted the expert opinions of Dr. Lorah, and that the judge improperly relied on hearsay presented through the State's experts. He further maintains that his continued confinement, decades after fully serving his criminal sentences, violates the United States and New Jersey Constitutions.

A-1970-19

The governing legal standards are well established. Pursuant to the SVPA, an involuntary civil commitment can follow an offender's service of a sentence, or other criminal disposition, when he or she "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26.

As defined by the statute, a qualifying mental abnormality is "a mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." Ibid. A mental abnormality or personality disorder "must affect an individual's ability to control his or her sexually harmful conduct." In re Commitment of W.Z., 173 N.J. 109, 127 (2002). A finding of a total lack of control is not necessary. Id. at 126-27. Instead, a showing of an impaired ability to control sexually dangerous behavior will suffice to prove a mental abnormality. Id. at 127.

At the commitment hearing, the State must prove a threat "to the health and safety of others because of the likelihood of his or her engaging in sexually violent acts . . . by demonstrating that the individual has serious difficulty in controlling sexually harmful behavior such that it is highly likely that he or she will not control his or her sexually violent behavior and will reoffend." Id. at

A-1970-19

132. The court must address "his or her present serious difficulty with control over dangerous sexual behavior," ibid., and the State must establish, by clear and convincing evidence, that it is highly likely that the individual will reoffend. Id. at 133-34; see also In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 607-08 (App. Div. 2003); N.J.S.A. 30:4-27.32.

The scope of our appellate review of judgments of civil commitment in SVPA matters is narrow. We only "reverse a commitment for an abuse of discretion or lack of evidence to support it." In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 225 (App. Div. 2007); see also In re Civil Commitment of R.F., 217 N.J. 152, 174-75 (2014); In re Civil Commitment of V.A., 357 N.J. Super. 55, 63 (App. Div.). Case law recognizes that "judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'" In re Civil Commitment of R.F., 217 N.J. at174 (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. at 226). Hence, we give the "utmost deference" to the reviewing judge's determination of the appropriate balancing of societal interests and individual liberty. In re Commitment of J.P., 339 N.J. Super. 443, 459 (App. Div. 2001) (citing State v. Fields, 77 N.J. 282, 311 (1978)); see also In re Civil Commitment of R.F., 217 N.J. at 174. "The appropriate inquiry is to canvass the . . . expert testimony in the record and

determine whether the lower courts' findings were clearly erroneous." In re D.C., 146 N.J. 31, 58-59 (1996).

Applying this limited scope of review and with due regard to the trial judge's role as fact-finder, we affirm Judge Freedman's determination, substantially for the sound reasons he set forth in his post-hearing decision. The judge articulated and applied the proper legal standards. He duly considered the fact that appellant's post-release altercations were with adult women rather than with minors and did not involve sexual assaults, but reasonably agreed with the State's experts that the conduct was indicative of a high risk of sexual re-offense. The judge had the prerogative as fact-finder to find the opinions of the State's experts more credible than Dr. Lorah. City of Long Branch v. Liu, 203 N.J. 464, 491 (2010) (explaining the fact-finder has the role of assessing the credibility and weight to be given to expert testimony); Angel v. Rand Express Lines Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961) (same).

The hearsay argument is likewise unavailing. The judge expressly noted he was not relying on any out-of-court statements for their truth but instead was considering them simply to understand the experts' opinions as permitted under N.J.R.E. 703.

A-1970-19

We have fully considered appellant's remaining points, including his claims of unconstitutionality, and conclude they lack sufficient merit to be discussed in this written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1970-19