962 A.2d 563 (2009)
404 N.J. Super. 468
R.R., Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent.
No. A-0508-07T2
Superior Court of New Jersey, Appellate Division.
Submitted October 2, 2008.
Decided January 12, 2009.
*565 R.R., appellant pro se.
Anne Milgram, Attorney General, for respondent (Melissa H. Raksa, Deputy Attorney General, of counsel and Keith S. Massey, Jr., Deputy Attorney General, on the brief).
Before Judges STERN, PAYNE and WAUGH.
The opinion of the court was delivered by PAYNE, J.A.D.
R.R., who was civilly committed to the State's Special Treatment Unit (STU) as a sexually violent predator, as defined by N.J.S.A. 30:4-27.26, following service of the maximum term of a sentence imposed for kidnapping[1] and other crimes, appeals from the denial by the Department of Corrections of his request for marital privacy and conjugal visitation. On appeal, he raises the following arguments in a pro se brief:
POINT I
APPELLANT ARGUES THAT THE VISITATION RULES, REGULATIONS, POLICIES, AND PROCEDURES PROMULGATED BY THE DOC AT THE SPECIAL TREATMENT UNITS ARE EXCESSIVELY RESTRICTIVE WITHIN A CIVIL COMMITMENT FACILITY AND VIOLATE HIS RIGHT TO MARITAL PRIVACY WITH HIS LAWFUL SPOUSE.
POINT II
APPELLANT ARGUES THAT A STATE AGENCY'S RELIANCE ON A CIVIL STATUTE TO DISENFRANCHISE HIM FROM HIS CONSTITUTIONAL RIGHTS VIOLATES HIS 4th, 5th, 8th, 9th, 13th and 14th AMENDMENT RIGHTS.
POINT III
APPELLANT ARGUES THAT HE HAS A RIGHT TO MARITAL PRIVACY *566 AND FREEDOM FROM GOVERNMENT INTRUSION.
Following our review of R.R.'s arguments in light of the record in the matter and applicable legal precedent, we affirm.

I.
The record on appeal discloses that, after R.R. had been temporarily committed to the STU and while he was awaiting a final adjudication on the State's commitment petition, he filed a marriage application with the STU administration, which was subsequently granted. A marriage between R.R. and L.A. took place on September 17, 2004.
On May 20, 2005, R.R. requested that the Department of Corrections (DOC) grant him "marital privacy and conjugal visitation." That request was denied as unauthorized, as were requests in 2006 and 2007. This appeal followed.

II.
On appeal, R.R. first challenges the State's failure to adopt regulations explicitly governing visitation at the STU, and the alleged determination by the Commissioner of the DOC to "merely clone ... pre-existing prison-penal visitation rules, regulations, and policies set forth in the NJ Administrative Code." In this regard, R.R. notes that relevant provisions of the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38, require that the rules of conduct applicable to persons subject to involuntary commitment as sexually violent predators "shall be established by regulation promulgated jointly by the Commissioner of Human Services and the Commissioner of Corrections in consultation with the Attorney General." N.J.S.A. 30:4-27.34(d). That statute further provides:
The regulations promulgated under this subsection shall take into consideration the rights of patients as set forth in [N.J.S.A. 30:4-24.2, governing rights of the mentally ill, tuberculosis, and mentally retarded], but shall specifically address the differing needs and specific characteristics of, and treatment protocols relating to, sexually violent predators. In developing these regulations, the commissioners shall give due regard to security concerns and safety of residents, treatment staff, custodial personnel and others in and about the facility.
[Ibid.]
R.R. interprets this statute as expressing the Legislature's intent that "the DOC [not] merely use a civil statute as a tool to create another prison-penal institution under the façade of a civil commitment treatment facility," but rather that it develop "new [visitation] rules, regulations, and policies that [a]re less restrictive than the prison-penal institution visitation program." R.R. further argues that he has a protected liberty interest in marital privacy and conjugal visitation, upon which the State has intruded as the result of "the miscarriages of the DOC." He states:
The State can not create a constitutionally protected liberty interest, such as marital privacy in non-penal environments, and then seek to bar appellant from the pursuit of life, liberty, happiness, privacy, and procreation associated with lawful marriage. Restrictions on visitation, like other prison regulations, violate the Constitution only if they have no reasonable relationship to any legitimate penalogical goal. See Bellamy v. Bradley, 729 F.2d 416, 420 (6th Cir.) cert. denied, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984); see also, Turner v. Safley, ... 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). There is no penalogical goal in a civil commitment *567 statute, the goal is exclusively geared toward rehabilitati[on] and treatment.
R.R. is correct that regulations applicable to the STU, like those applicable to prisons, do not authorize conjugal visitation. However, if R.R. seeks to claim that regulations governing the operation of the STUs were improperly promulgated, without the required input of the Department of Human Services (DHS), that position would not be well-grounded, as both it and the DOC participated in establishing the applicable regulations, set forth at N.J.A.C. 10:36A-1.1 to -4.6, and when doing so, engaged in the appropriate rulemaking process. See Administrative Procedure Act, N.J.S.A. 52:14B-1 to -15 (setting forth notice and hearing requirements).
The regulations, among other things, enumerate rights of residents at the STU that are not subject to denial, see N.J.A.C. 10:36A-2.2, and ones that are deniable, see N.J.A.C. 10:36A-2.3. Among the rights that may be curtailed pursuant to regulation is the right to privacy, N.J.A.C. 10:36A-2.3(a)1, and the right to see visitors during regularly scheduled visiting hours, N.J.A.C. 10:36A-2.3(a)6, "when the Department of Corrections staff determines that such restrictions are necessary to protect the resident, other residents, staff, general public, or property, or to ensure the safe, secure and orderly operation of the facility, or for other good cause." N.J.A.C. 10:36A-2.3(a).
Conjugal visits do not appear specifically among either the undeniable or deniable rights. But although a commenter suggested during the rulemaking process that such rights should be recognized, that suggestion was rejected by the Departments, which responded:
The facility officials are responsible to operate these Special Treatment Units designated for the custody, care and treatment of sexually-violent predators and have determined that the list of deniable and undeniable rights are appropriate and give due regard to security and safety concerns of residents and staff. The Departments disagree with the opinions of the commenter and that the additional rights suggested by the commenter should be added.
[39 N.J.R. 2249(a), Comment 22 (May 9, 2007).]
R.R. notes that, in N.J.S.A. 30:4-27.34d, the Legislature directed those formulating the rules of conduct applicable to persons committed to the STU to take into consideration the rights of patients expressed in the Mental Health Patient's Bill of Rights, set forth at N.J.S.A. 30:4-24.2. He further notes that N.J.S.A. 30:4-24.2e(10) provides that such mental health patients have the right to "suitable opportunities for interaction with members of the opposite sex, with adequate supervision." New Jersey decisions do not discuss whether such a right encompasses conjugal conduct. However, if it does, the recognition of such a right in the context of mental health patients does not mandate its similar recognition in the context of sexually violent predators civilly committed pursuant to the terms of the SVPA. Indeed, the Legislature explicitly recognized this proposition in the portion of the SVPA that we previously quoted, which permits a modification of the Mental Health Patient's Bill of Rights to "specifically address the differing needs and specific characteristics of and treatment protocols relating to sexually violent predators" and to satisfy safety and security concerns in and about the STU. N.J.S.A. 30:4-27.34d.
An agency regulation is reviewed with a "presumption of reasonableness and validity." In re Comm'r of Ins.'s Order Regarding the Rate Filing by the Mkt. *568 Transition Facility, 132 N.J. 209, 221, 624 A.2d 565 (1993). Furthermore, an agency is entitled to deference with regard to statutory interpretation when formulating regulations because of its expertise in the specialized area that the regulation governs. St. Peter's Univ. Hosp. v. Lacy, 185 N.J. 1, 12-13, 878 A.2d 829 (2005); In re Freshwater Wetlands Protect. Act Rules, 180 N.J. 478, 488-89, 852 A.2d 1083 (2004). The burden lies with R.R. to demonstrate that the regulation is arbitrary, capricious or unreasonable. Dougherty v. Dept. of Human Servs., Div. of Med. Assistance & Health Servs., 91 N.J. 1, 6, 449 A.2d 1235 (1982).
In this appeal, R.R. has failed to meet his burden of demonstrating that the prohibition of conjugal visits in the present context should be voided as unauthorized. In re Taylor, 158 N.J. 644, 657, 731 A.2d 35 (1999). We have previously observed that: "Individuals are civilly committed under the [SVPA] because they pose a danger to the public health and safety due to their behavior." In re Civil Commitment of J.H.M., 367 N.J.Super. 599, 610, 845 A.2d 139 (App.Div.2003) (citing Kansas v. Hendricks, 521 U.S. 346, 357, 117 S.Ct. 2072, 2079-80, 138 L.Ed.2d 501, 512 (1997)), certif. denied, 179 N.J. 312, 845 A.2d 137 (2004). They are likewise in need of treatment designed to modify their sexually violent behavior and thus reduce the danger that they pose to others. Both goals are fostered by a prohibition on conjugal visitation, since that prohibition eliminates one opportunity to engage in potentially sexually aggressive behavior, and ensures that treatment goals are not subverted by conduct that may be incompatible with those goals.
R.R. argues that the regulations at issue violate the Legislature's intent that the agencies would draft new regulations specific to the STUs, rather than overlaying existing regulations that apply to correctional facilities. He claims that the regulations for STUs should be different from prison regulations because, at STUs, "the goal is exclusively geared toward rehabilitati[on] and treatment." However, R.R. is incorrect in claiming that treatment is an exclusive goal, rather than just one of the primary objectives of the SVPA. Security concerns remain after a sexually violent predator has been civilly committed. Were R.R.'s contentions to be true, there would be no need for joint authority over the STUs by the DOC, which remains responsible for security, and the DHS, which is accorded responsibility for treatment. In re Civil Commitment of J.H.M., supra, 367 N.J.Super. at 609, 845 A.2d 139; In re Civil Commitment of D.L. & C.M., 351 N.J.Super. 77, 80-81, 797 A.2d 166 (App.Div.2002), certif. denied, sub nom, In re Civil Commitment of David L., 179 N.J. 373, 845 A.2d 1255 (2004); In re Commitments of M.G. & D.C., 331 N.J.Super. 365, 373, 751 A.2d 1101 (App.Div.2000). The Legislature has made it clear that the SVPA is meant, in part, to address "the need for commitment of those sexually violent predators who pose a danger to others should they be returned to society." N.J.S.A. 30:4-27-25c. The civil commitment statute, itself, is the product of "a reasoned balance between the liberty interest of a committee in need of treatment for emotional disorders and protection of the citizenry from those who have demonstrated an inability to control their sexual violent behavior and are highly likely to re-offend." In re Civil Commitment of J.M.B., 395 N.J.Super. 69, 97, 928 A.2d 102 (App.Div.), certif. granted, 193 N.J. 222, 936 A.2d 969 (2007). As set forth in the Assembly Appropriations Committee Statement to Senate, No. 895, L. 1998, c. 71:
The Department of Corrections will be responsible for the operation of any *569 facility designated for the custody, care and treatment of sexually violent predators, and will provide or arrange for custodial care. The Division of Mental Health Services in the Department of Human Services will provide or arrange for treatment tailored to address the specific needs of sexually violent predators.
See also N.J.S.A. 30:30:4-27.34a and b (allocating responsibility for custody, care and treatment of sexually violent predators).
Involuntary commitment under the SVPA requires clear and convincing evidence that the individual is likely to reoffend, State v. Bellamy, 178 N.J. 127, 136, 835 A.2d 1231 (2003), or in the language of the statute, is "likely to engage in repeat acts of predatory sexual violence if not treated for [his or her] mental conditions." N.J.S.A. 30:4-27.25a. The statute further states that: "`Likely to engage in acts of sexual violence' means the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others." N.J.S.A. 30:4-27.26. The DOC's policy of denying conjugal visits is consistent with the purpose of protecting visitors from individuals whom the court has determined are likely to commit acts of sexual violence.
Moreover, the ban on conjugal visits at STUs is consistent with the other regulations concerning visitors at the facilities, including restrictions on where visitors may go inside the STU and the types of physical contacts that are permitted. Even if such regulations were to mirror those in place at correctional institutions, they still reflect legislative intent. During the rulemaking process, a commenter expressed concern that STUs would be run as correctional facilities, rather than as treatment centers. 39 N.J.R. 2249(a), Comment 2 (May 9, 2007). In response, the agencies noted that the Legislature had specifically put the DOC in charge of operating the facilities, and thus, "the law specifically addresses the need for such predators to be kept in a secure facility that is operated by the DOC, which is, in fact a law enforcement agency." Ibid. While the Legislature may not have intended that the STUs be run strictly as correctional facilities (which they are not), it is clear that it intended that the DOC ensure the safety of visitors and others to the facility. The challenged regulations implement this goal.
We note that, although conjugal visits are prohibited, R.R. is not denied other contacts with his spouse. The Residents' Guide to the STU permits visitation on Wednesday evenings and on the weekend. During that time, kissing and hugging can occur at the commencement and conclusion of the visit. Additionally, hand holding is allowed, and both visitors and residents are permitted to place their arms around the shoulders of others and to place their heads on another's shoulder.

III.
R.R. argues additionally that his right to privacy and conjugal visits is constitutionally protected, and that the State has unconstitutionally deprived him of that right, thereby violating multiple constitutional provisions. In this regard, courts have held in a penal context that, while the right to marry is constitutionally protected, the right to conjugal visits and marital privacy during incarceration does not enjoy similar constitutional protection. See, e.g., Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 461, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506, 515 (1989) (holding that prisoner has no due process right to particular visitors); Turner v. Safley, 482 U.S. 78, 95-96, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64, 83 (1987) (finding regulation prohibiting *570 marriage by prison inmates was constitutionally infirm, but that conjugal relations could be limited); Block v. Rutherford, 468 U.S. 576, 589, 104 S.Ct. 3227, 3234, 82 L.Ed.2d 438, 448-49 (1984) (upholding prohibition on contact visits); Ortiz v. Secretary for the Dept. of Corr., 156 Fed.Appx. 132, 134 (11th Cir.2005); Champion v. Artuz, 76 F.3d 483, 486 (2d Cir.1996); Hernandez v. Coughlin, 18 F.3d 133, 136-37 (2d Cir.1994), cert. denied, 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994); McCray v. Sullivan, 509 F.2d 1332, 1334-35 (5th Cir.), cert. denied, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975); Lyons v. Gilligan, 382 F.Supp. 198, 202 n. 2 (D.Ohio 1974); Stuart v. Heard, 359 F.Supp. 921, 923-24 (S.D.Tex.1973).
The right to conjugal visits with sexually violent predators who have been civilly committed and are lodged in secure facilities has not been addressed in a published opinion.[2] Nonetheless, it is clear that the liberty interests of civilly committed individuals may be abridged if doing so is related to the government's interests in treatment and security. See, Youngberg v. Romeo, 457 U.S. 307, 320, 102 S.Ct. 2452, 2460, 73 L.Ed.2d 28, 40 (1982) (discussing rights of involuntary committees suffering from mental retardation) (citing Bell v. Wolfish, 441 U.S. 520, 540, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447, 469 (1979) (discussing rights of detainees during pretrial detention)). See also Fuentes v. Wagner, 206 F.3d 335, 343-44 (3d Cir.2000) (pretrial detainee).
As Youngberg makes clear, in this civil context, R.R.'s rights do not arise under the Eighth Amendment but, rather, under the substantive due process provisions of the Fourteenth Amendment. Id. at 312-14, 102 S.Ct. at 2456-57, 73 L.Ed.2d at 35-36.[3]See also, Seling v. Young, 531 U.S. 250, 260-61, 121 S.Ct. 727, 733, 148 L.Ed.2d 734, 745 (2001) (finding Washington's Sexually Violent Predator Act to be civil for purposes of constitutional analysis); Hicks v. James, 255 Fed.Appx. 744, 748 (4th Cir.2007); Hydrick v. Hunter, 500 F.3d 978, 994, 996-98 (9th Cir.2007) (discussing other substantive due process rights of SVPs); Jones v. Blanas, 393 F.3d 918, 931-34 (9th Cir.2004) (confined individual awaiting civil commitment under SVPA), cert. denied, sub nom., County of *571 Sacramento v. Jones, 546 U.S. 820, 126 S.Ct. 351, 163 L.Ed.2d 61 (2005); Revels v. Vincenz, 382 F.3d 870, 874 (8th Cir.2004) (psychiatric patient), cert. denied, sub nom., Revels v. Wimp, 546 U.S. 860, 126 S.Ct. 371, 163 L.Ed.2d 140 (2005); Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir.1998) (pretrial detainee); In re Civil Commitment of J.H.M., supra, 367 N.J.Super. at 607-08, 845 A.2d 139. "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance `the liberty of the individual' and `the demands of an organized society.'" Youngberg, supra, 457 U.S. at 320, 102 S.Ct. at 2460, 73 L.Ed.2d at 40 (quoting Poe v. Ullman, 367 U.S. 497, 542, 81 S.Ct. 1752, 1777, 6 L.Ed.2d 989, 1019 (1961) (Harlan, J., dissenting)). The proper standard for determining whether a State has adequately protected the rights of an involuntarily committed individual requires that "the courts make certain that professional judgment in fact was exercised." Id. at 321, 102 S.Ct. at 2461, 73 L.Ed.2d at 41. A decision, if made by a professional, "is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." Id. at 323, 102 S.Ct. at 2462, 73 L.Ed.2d at 42.
In the present case, R.R. has not overcome the presumption of validity established by the Supreme Court in Youngberg. Nor has he articulated any basis for a determination by us that his interest in liberty and conjugal relations was improperly balanced against the State's dual interest in security and rehabilitation, a matter that we have discussed at length earlier in this opinion. See also State v. Reyes, 207 N.J.Super. 126, 140-41, 504 A.2d 43 (App.Div.1986) (holding that although adult consensual sexual behavior is constitutionally protected, the sexual behavior of a probationer in a residential drug treatment program can be the subject of reasonable regulation).

IV.
R.R. also asserts that his right to equal protection as guaranteed by the Fourteenth Amendment was violated as the result of the denial of his conjugal rights. In a related context, the New Jersey Supreme Court in large measure rejected a challenge to the State's Megan's Laws, N.J.S.A. 2C:7-1 to 5 (registration) and N.J.S.A. 2C:7-6 to -11 (notification), and in the course of doing so, addressed equal protection concerns under the Federal Constitution arising from distinctions between the treatment upon release of repetitive and compulsive sexual offenders and other State residents. See Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995). In its decision, the Court recognized that "[e]qual protection does not preclude the use of classifications, but requires only that those classifications not be arbitrary." Id. at 91, 662 A.2d 367 (citing State v. Mortimer, 135 N.J. 517, 536, 641 A.2d 257, cert. denied, 513 U.S. 970, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994)). The Court further observed that sex offenders did not constitute a suspect class and held that "[a] classification that does not impact a suspect class or impinge upon a fundamental constitutional right will be upheld if it is rationally related to a legitimate government interest." Id. at 92, 662 A.2d 367 (citing Brown v. City of Newark, 113 N.J. 565, 552 A.2d 125 (1989)). In this connection, the Court stated that, previously, it had "specifically held that creating a separate classification for repetitive-compulsive sex offenders is not arbitrary and `has a rational basis.'" Id. at 93, 662 A.2d 367 (citing State v. Wingler, 25 N.J. 161, *572 176, 135 A.2d 468 (1957)). It then concluded that: "There is clearly no question but that the trial court was correct in its conclusion that `[p]ublic safety is unquestionably within the Legislature's powers and protecting the public from recidivistic sex offenders is a legitimate state interest.'" Ibid.
We find constitutional principles applicable to the equal protection claims of repetitive and compulsive sexual offenders to be equally applicable in the present circumstances to R.R.'s claim of denial of equal protection in the context of his conjugal and marital privacy rights. Similarly, we find that the policies implemented by the DOC when denying conjugal rights are rationally related to the security and rehabilitative goals of the STU. Clearly, the DOC has an interest in monitoring interaction between residents and visitors in order to ensure that contraband is not passed to residents, that safety is maintained, and that treatment goals are not compromised.
In a related Fourth Amendment context, in which the policy of conducting random searches of STU residents' rooms was challenged, we held:
The staff of the STU are not less entitled than employees of ... other psychiatric hospitals to the security afforded by inspections to "ensure the patients are not in a position to harm either themselves or others." [State v. Stott, 171 N.J. 343,] 362, 794 A.2d 120 [(2002)]. A patient in a psychiatric hospital cannot expect the hospital staff to relinquish control over the security of the patients' rooms. In the same manner, R.M. cannot expect the staff at the STU to forego measures that allow them to exercise security control over the area of his room.
[R.M. v. The Northern Regional Unit, 367 N.J.Super. 229, 236, 842 A.2d 308 (App.Div.2004).]
Similar factors justify the restrictions imposed in this case, which we find to be rationally related to the security and rehabilitative goals of the facility.
Although R.R. has challenged the restrictions imposed upon his marital privacy and conjugal rights on other constitutional grounds, as we have previously specified, we find none of his arguments in this regard to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] R.R. had previously been convicted of three counts of first-degree aggravated sexual assault, which constituted the "sexually violent offenses" required as a predicate to his commitment. See N.J.S.A. 30:4-27.26 (definitions).
[2] But see Turay v. Riveland, 85 F.3d 638, 1996 WL 228509, 1996 U.S.App. Lexis 11727 (9th Cir.1996) and Young v. Thompson, 992 F.2d 1221, 1993 WL 136954, 1993 U.S.App. Lexis 10263 (9th Cir. 1993), both finding that the state's restriction on conjugal visits for similarly situated residents did not offend due process or equal protection and finding further that the policy was "rationally related to the legitimate objectives of security and treatment of civilly committed sex offenders." Turay, supra, 1996 WL 228509 at *1, 1996 U.S.App. Lexis 11727 at *4. However, we do not regard either of these decisions as precedential. R. 1:36-3.
[3] In this regard, the Supreme Court has established that the purpose of the civil commitment statute is not punitive. "The [SVPA] focuses on a sex offender's mental condition and the dangers posed to the public.... Although the confinement is onerous and has some punitive impact, that impact is the `inevitable consequence of the regulatory provisions.'... That is, the impact is not solely attributable to a punitive legislative intent." Bellamy, supra, 178 N.J. at 138, 835 A.2d 1231 (quoting Doe v. Poritz, 142 N.J. 1, 46, 662 A.2d 367 (1995)). The Eighth Amendment does not apply when a State takes an action that is not the result of "a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Ingraham v. Wright, 430 U.S. 651, 671, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711, 730 (1977). New Jersey's civil commitment proceedings may arise out of a criminal prosecution, but are based primarily on the committee's present mental condition.