**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5472-15T2
                  A-5473-15T2

TERRY TRAYLOR,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

GERALDO MORALES,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted October 11, 2018 – Decided  October 24, 2018

Before Judges Accurso and Vernoia.

On appeal from the New Jersey Department of Corrections.

Terry Traylor and Geraldo Morales, appellants pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Suzanne M. Davies, Deputy Attorney General, on the brief).

PER CURIAM

In these appeals, which were scheduled back-to-back and consolidated for purposes of this opinion, Geraldo Morales and Terry Traylor (collectively, appellants) challenge the New Jersey Department of Corrections' (DOC) July 20, 2016 final decisions rejecting their claims the DOC lacked authority to install padlocks on, and limit access to, refrigerators in the Special Treatment Unit (STU) where appellants are housed pursuant to civil commitments under the Sexually Violent Predator Act, N.J.S.A. 30:4-27.24 to -27.38 (SPVA). We affirm.

The pertinent facts in the record before the DOC are not disputed.[1] The DOC's STU Search Plan Coordinator issued a written directive requiring the

---

[1] We do not address appellants' numerous factual assertions that find no support in the record. For example, appellants' brief details alleged "problems [they] and the resident population [of the STU] are experiencing." Those factual allegations, and others, were not presented to the DOC and cannot properly be

installation of locks on the refrigerators in the STU housing units. He further directed that DOC officers shall lock and unlock the refrigerators, monitor the refrigerators while they are open and inspect the refrigerators for contraband prior to relocking them. The directive also required that the refrigerators be opened a minimum of two times during each of the DOC officers' work shifts and during the residents' "mess movements."

In identically worded "Request System & Remedy Form[s]," appellants separately challenged the installation of the locks on the refrigerators.[2] They alleged the DOC "overstepped [its] official authority" and failed to comply with N.J.S.A. 30:4-27.34(c), which provides that "[a]ppropriate representatives of the [DOC] and the Department of Human Services shall participate in an interagency oversight board to facilitate the coordination of the policies and procedures of the facility." The STU Custody Department issued written

---

considered for the first time on appeal. See, e.g., Davis v. Devereux Foundation, 209 N.J. 269, 296 n.8 (2012) (explaining appellate review is limit to the record presented to the trial court).

[2] It is unclear from the record whether the STU Search Plan Coordinator's written directive preceded or followed appellants filing of the Request System & Remedy Forms. It is unnecessary to determine when the written directive was issued, however, because appellants challenge the DOC's authority to lock the refrigerators and not the means by which the STU Search Plan Coordinator communicated the requirement.

responses to appellants' challenges to the directive, stating STU residents are provided access to the refrigerators no less than four times per day and explaining "the refrigerators are secured to control and deter the introduction of contraband and its movement" in the facility.

Appellants appealed to the DOC, arguing the Custody Department's responses did not "mention whether the issue will be presented to the" interagency oversight board, and the directive failed to include a policy governing the "'time' when residents[] might receive access to their food inside of the locked refrigerators." The DOC issued written final decisions denying the appeals and upholding the Custody Department's decisions. The present appeals followed.

In their joint brief, appellants present the following arguments for our consideration:

> POINT I
>
> THE DEPARTMENT SHOULD BE COMPELLED TO CREATE AND ENFORCE WRITTEN INTERNAL MANAGEMENT PROCEDURES GOVERNING THE LOCKING AND UNLOCKING OF REFRIGERATORS PURSUANT TO N.J.A.C. [] 10:36A-1.5.

THE DEPARTMENT MUST DO MORE [THAN] MERELY ASSERT A SECURITY CONCERN AND MUST DO MORE THAN OFFER CONCLUSIONARY STATEMENTS AND POST HOC RATIONALIZATIONS FOR ITS CONDUCT.

Our role in reviewing decisions of administrative agencies is limited.  See In re Stallworth, 208 N.J. 182, 194 (2011).  Decisions of administrative agencies carry with them a presumption of reasonableness.  Newark v. Nat. Res. Council, 82 N.J. 530, 539 (1980).  We will not disturb the determination of an administrative agency absent a showing that it was arbitrary, capricious, or unreasonable.  Circus Liquors, Inc. v. Middletown Twp., 199 N.J. 1, 9 (2009). Thus, we must determine whether: (1) "the agency's action violates express or implied legislative policies"; (2) "the record contains substantial evidence to support the findings on which the agency based its action"; and (3) "in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors."  Id. at 10 (quoting Mazza v. Bd. of Trs., Police & Firemen's Retirement Sys., 143 N.J. 22, 25 (1995)).  Nonetheless, we must "engage in a 'careful and principled consideration of the agency record and findings.'"

Williams v. Dep't of Corr., 330 N.J. Super. 197, 204 (App. Div. 2000) (citation omitted).

Appellants argue for the first time here that the Search Plan Coordinator's directive requiring the locking of STU housing unit refrigerators is invalid under N.J.A.C. 10:36A-1.5.[3] We reject the argument because it was not "properly presented to" the DOC and does not "go to the jurisdiction of [the DOC] or concern matters of great public interest." State v. Robinson, 200 N.J. 1, 20 (2009) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)); see also In re Stream Encroachment Permit, 402 N.J. Super. 587, 602 (App. Div. 2008) (noting we will not consider issues that were not raised before an administrative agency unless they are of public importance).

We also reject the argument because it is wholly bereft of merit. Appellants' contention is founded on N.J.A.C. 10:36A-1.5, which provides that "[t]he [Division of Mental Health and Addiction Services (DMHAS)] Clinical Director and the [DOC] Administrator, or their designees, shall develop and maintain written policies and procedures for the operation of the program and

---

[3] The record shows appellants argued before the DOC only that the directive contravened the requirements of N.J.S.A. 30:4-27.34(c). They do not reprise that argument on appeal, and we therefore do not address it. See Jefferson Loan Co. v. Session, 397 N.J. Super. 520, 525 n.4 (App. Div. 2008) (finding an issue not briefed on appeal is deemed waived).

facility, consistent with this chapter." They contend the DOC's decision to install the locks and the STU Search Plan Coordinator's directive are invalid because N.J.A.C. 10:36A-1.5 requires that such actions be adopted and implemented jointly by the DOC and DMHAS. Appellants argue that since there is no evidence the DMHAS was involved in the decision to install the locks, the DOC's actions are invalid under the regulation. We disagree.

Appellants' contention is founded on a misinterpretation of N.J.A.C. 10:36A-1.5. The regulation requires that the DOC and DMHAS develop and maintain policies for the operation of the STU, but does not condition the validity of the actions of either agency upon the involvement or approval of the other. N.J.S.A. 10:36A-1.5 requires only that written policies promulgated by either the DOC or DMHAS be developed and maintained "consistent with" Chapter 36A of Title 10 of the New Jersey Administrative Code.[4]

The DOC and the DMHAS are vested with separate and distinct responsibilities under the SVPA. The DOC is "responsible for the operation of any facility designated for the custody, care and treatment of sexually violent

---

[4] In accordance with N.J.S.A. 30:4-27.34(d), the regulations included in Chapter 36A were jointly promulgated by the Commissioner of the DOC and the Commissioner of Human Services. 38 N.J.R. 1984(a) (May 15, 2006).

predators, and shall provide or arrange for custodial care of persons committed pursuant to" the SVPA. N.J.S.A. 30:4-27.34(a). The DMHAS in the Department of Human Services "provide[s] or arrange[s] for treatment" of sexually violent predators civilly committed to the STU under the SVPA. N.J.S.A. 30:4-27.34(b). We recognized this division of responsibilities in R.R. v. New Jersey Department of Corrections, 404 N.J. Super. 468, 476 (App. Div. 2009), observing that the operation of the STU involves two primary objectives; treatment of sexually violent predators with a goal of rehabilitation and security concerns after a sexually violent predator has been civilly committed. We explained that to achieve those goals, the SVPA vests the DOC with the responsibility for STU security and the Department of Human Services, within which the DMHAS operates, with the responsibility for treatment of sexually violent predators. Ibid.

Chapter 36A distinguishes between the respective responsibilities of the DOC and the DMHAS in a manner consistent with the express terms of the SVPA. N.J.A.C. 10:36A-1.1(c) provides that the DOC is responsible for the "operation of any facility designated for the custody, care control and treatment of sexually violent predators." N.J.A.C. 10:36A-1.1. provides that the DMHAS

is responsible for "provid[ing] or arrang[ing] for sex offender treatment of persons committed pursuant to the SVPA."

Chapter 36A further authorizes "[s]earch[es] of residents and facilities in order to control and deter contraband,"[5] N.J.A.C. 10:36A-1.2(a)(7), and specifically authorizes the DOC to conduct such searches pursuant to a comprehensive written search plan, N.J.A.C. 10:36A-4.1(a) to (b). The DOC is required to appoint a Search Plan Coordinator who is responsible for submitting reports concerning "searches completed and contraband recovered." N.J.A.C. 10:36A-4.1(d).

The DOC's decision to install locks on the refrigerators and the Search Plan Coordinator's written directive is "consistent with" Chapter 36A of Title 10 of the New Jersey Administrative Code, N.J.A.C. 10:36A-1.5, because the DOC is vested with the responsibility for the security of the STU and the control, deterrence and recovery of contraband, N.J.A.C. 10:36A-1.1, -1.2(7), and -4.1. The challenged DOC decision and directive requiring installation of the locks are grounded in the SVPA and the regulations, and are reasonably designed to provide a safe and secure STU by deterring and detecting the possession and

---

[5] N.J.A.C. 10:36A-1.4 includes a comprehensive definition of the term "contraband."

distribution of contraband.  We therefore discern no basis in the record to conclude the DOC's final decisions are arbitrary, capricious or unreasonable, and appellants offer none.  See Circus Liquors, Inc., 199 N.J. at 9-10.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5472-15T2