**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2837-22
A-3323-22

R.J.M.,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

R.J.M.,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF HEALTH,

    Respondent.

_____

Submitted September 23, 2025 – Decided October 20, 2025

Before Judges DeAlmeida and Torregrossa-O'Connor.

On appeal from the New Jersey Department of Corrections and the New Jersey Department of Health.

R.J.M., appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondents (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the briefs).

PER CURIAM

In these consolidated matters, R.J.M. appeals from the September 12, 2024 final agency decision of the Department of Corrections (DOC) and the April 19, 2023 final agency decision of the Department of Health (DOH), both of which denied his request to possess a personal computer with internet access and a printer in the secure treatment facility where he is civilly committed as a sexually violent predator (SVP).[1]  We affirm.

I.

Appellant is civilly committed to the Special Treatment Unit (STU) pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38.  A person who has committed a sexually violent crime may be civilly committed pursuant to the SVPA if he or she suffers from a mental abnormality

---

[1]  We identify appellant by his initials to protect the confidentiality of records relating to civil commitment proceedings.  R. 1:38-3(f)(2).

2

or personality disorder that causes serious difficulty in controlling sexually violent behavior such that the person is likely to commit a sexually violent offense without confinement "in a secure facility for control, care and treatment." In re Commitment of W.Z., 173 N.J. 109, 120, 132 (2002); N.J.S.A. 30:4-27.26. Involuntary commitment under the SVPA requires clear and convincing evidence the subject of the commitment is likely to sexually reoffend if not treated for his or her mental condition. State v. Bellamy, 178 N.J. 127, 136 (2003); N.J.S.A. 30:4-27.25(a).

"Individuals are civilly committed under the [SVPA] because they pose a danger to the public health and safety due to their behavior." In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 610 (App. Div. 2003). "They are likewise in need of treatment designed to modify their sexually violent behavior and thus reduce the danger that they pose to others." R.R. v. N.J. Dep't of Corr., 404 N.J. Super. 468, 476 (App. Div. 2009).

DOC is "responsible for the operation of any facility designated for the custody, care and treatment of [SVPs], and shall provide or arrange for custodial care of persons committed pursuant to" the SVPA. N.J.S.A. 30:4-27.34(a). When the SVPA was enacted, the statute provided "[t]he Division of Mental Health Services in the Department of Human Services [(DHS)] shall provide or

3

arrange for treatment for a person committed pursuant to" the SVPA. N.J.S.A. 30:4-27.34(b). In a 2017 executive branch reorganization, certain functions of DHS, including the provision of treatment and therapy to STU residents, were transferred to DOH. See Reorganization Plan 001-2017; see also N.J.A.C. 8:131-1.1(a) (noting the DOC and the DOH Commissioners' adoption of "regulations regarding the custody, care, control, and treatment of [SVPs] who have been involuntarily civilly committed to a secure facility pursuant to the" SVPA) and N.J.A.C. 8:131-1.1(b) ("The Division of Behavioral Health . . . in the [DOH] shall provide or arrange for sex offender treatment of persons committed pursuant to the SVPA."). While both agencies have a role in the operation of the STU, DOC, not DOH, is responsible for making non-medical and non-therapeutic decisions about STU residents, including with respect to what personal property they may possess.

A.    Appellant's Inquiry to DOC and Agency's Response.

On February 17, 2023, appellant submitted a request to DOC to purchase and possess a personal computer with access to the internet and a printer. Appellant listed the following reasons in support of his request:

> (a)    D.O.C. requires all residents to only access property, books, clothing[,] electronics that fit into [four to twenty-seven] gallon containers (approved for

[thirty-two] gallon, but no[] company located to purchase [thirty-two] gal.);

(b)     Not enough computers on each unit for [seventy-five to eighty] residents, each unit has approximately [two to four] computers[,] except east unit has [eight] computers for the same amount of people.  The[re] are no printers on any unit for residents to access during recreation times, except I noticed the north unit is permitted to use the vocation rec (sic) computer to print but it is only for the north unit[;]

(c)     Word[]processor(s) are [o]bsolete and are unavailable to be repaired due to word[]processor(s) and parts are no longer available to d[o] the repair [be]cause machines and parts are [o]bsolete;

(d)     To have unlimited access to a computer to do home[]work for therapy and to better my education by getting a colle[]ge degree;

(e)     Access le[]gal research;

(f)     Access to courts, court[s] now require that all documents submitted be typed;

(g)     To place source of sale purchases, companies . . . are requiring you place your order online, they are no longer allowing the operators to take credit card information over the phone[;] you have to go online;

(h)     To do banking[,] open bank accounts and pay bills[.]  Banks now will not allow you to open accounts over the phone, they tell you [that] you must personally come . . . to a bank branch or go online; [and]

5

> (i) Have unlimited confidential email communication and [video] chat with our attorney(s) or the courts.

On March 3, 2023, an STU staff member responded, "your concern is noted, but for safety and security reasons, is denied." In a separate response issued on the same day, the staff member stated, "[a]t this time[,] your concern has been noted by the administration. But, not approved. Please see DOH for assistance."

On March 18, 2023, appellant submitted a further inquiry to DOC:

> Please be more specific as to what the safety and security concerns are and what criteria would or could allow us to possess and/or access computers and printers for our individual retention and use. Other than denying the request how could those concerns be addressed?
>
> A great deal of the treatment work we are required to do is written and individual computers would greatly facilitate this. Also, upon information and belief, it is my understanding that Correctional and/or SVP facilities do allow some form of computers to be retained and used by the population. Has the administration explored any of the type of systems already permitted in correctional or other secure settings?

On March 24, 2023, a designee of the STU Administrator issued a final agency decision stating, "answer from staff is appropriate."

On May 15, 2023, appellant appealed the March 24, 2023 final agency decision. That matter was assigned Docket No. A-2837-22.

B.      Appellant's Inquiry to DOH and Agency's Response.

On January 8, 2023, appellant submitted a request to DOH for "permission to purchase and have in my possession a computer to do my school research and legal work, including banking and ordering items like clothing and food [and] to correspond confidentially with my attorney and the court."

On February 9, 2023, a staff member responded by noting STU residents were not permitted to possess personal computers under a long-standing agency policy. The response stated computers are regularly available for residents for purposes of therapy and legal access.

On February 27, 2023, appellant administratively appealed DOH's initial decision. He argued the availability of computers at the STU was limited because the number of computers was insufficient for the number of residents, hours of availability were insufficient, and staff members required to monitor residents' computer activity were often late or did not appear during hours of availability. In addition, appellant argued denial of a personal computer undermines his rehabilitation because "practically nothing" can be done in

society without internet access and when he is released his chances of obtaining employment will be restricted if he has no experience accessing the internet.

On April 19, 2023, DOH issued a final agency decision stating, "unfortunately[,] personal computers are not allowed into the facility. DOH is looking to expand computer programming offered at the STU."

On June 19, 2023, appellant appealed the April 19, 2023 final agency decision. That matter was assigned Docket No. A-3323-22.[2]

C.    Consolidation of Appeals and Subsequent Proceedings.

On October 4, 2023, we granted appellant's motion to consolidate the appeals.

On April 22, 2024, appellant moved to supplement the record with several documents, including an August 8, 2023 letter he wrote to STU Clinical Director Dr. Doreen Stanzione and her September 8, 2023 response. In his letter, appellant asked Stanzione to clarify a statement she made at a July 13, 2023 meeting about permitting STU residents to have personal computers.

In her response, Stanzione stated "at this time, computers/laptops with [Wi-Fi] capabilities are currently not supported to enter the [STU]. However,

---

[2] The notice of appeal identified the date of the DOH decision as May 10, 2023. The case information statement indicated appellant did not receive the April 19, 2023 decision until May 10, 2023.

DOC and DOH continue to work together to identify ways that [r]esidents can be supported with technology that will help them complete therapy work." Stanzione continued, "we have [twenty-six] new PC's and [three] printers we are working to bring in for [r]esidents to use. While this has been in the works for a long time, we are waiting for a few safety measures. Once they are complete, the computers will be installed."

On July 22, 2024, DOC moved for a remand to obtain: (1) a fuller explanation from DOC for the denial of appellant's request in light of Stanzione's response to appellant's letter; and (2) updated information from DOC regarding the number of computers and printers available to STU residents. We granted the motion and retained jurisdiction.

On September 12, 2024, STU Administrator Patricia Nah issued a letter stating:

> The Department finds that personal computers are not permitted because they are likely to compromise security and the therapeutic environment. Personal computers are contraband in a secure facility because of their ability to receive, transmit, or store data. Computers are easily used to store and view data that may include pornographic pictures and/or videos.
>
> Furthermore, personal computers are capable of accessing the internet, both through wireless and hard lines. The Department believes that access to the internet would open the door for [r]esidents to prey on

9

> unsuspecting victims and there would be a public safety concern.
>
> In addition to its size and capability to store large amounts of data, it would be virtually impossible for either agency [DOC or DHS] to monitor it effectively.
>
> At the STU, there are currently a total of [twenty-four] computers and [seven] printers provided for [r]esidents' use. In your current location in the West Unit, you have access to [ten] computers and [one] printer.

We granted appellant's motion to file an amended notice of appeal from the September 12, 2024 final agency decision.

Appellant argues the decisions are invalid because: (1) they are based on inaccurate facts, including Nah's claim ten computers and one printer are available to residents in appellant's unit; (2) technology is available to allow STU staff to adequately monitor appellant's use of an internet-enabled computer and printer; (3) they violate Article I, paragraph 1 of the State Constitution as "an excessive exercise of governmental authority" and a denial of due process; (4) they violate the due process provision of the Fourteenth Amendment to the United States Constitution by depriving him of a meaningful opportunity for effective treatment and release; (5) they deprive him of his federal constitutional rights to free speech and access to the courts; (6) they violate N.J.A.C. 8:131-2.1(a), which protects the rights of STU residents; and (7) the issuance of

decision by separate agencies on the same subject violated N.J.S.A. 30:4-27.34 and N.J.A.C. 8:131-1.1.

## II.

Our review of decisions by administrative agencies is limited, with appellants carrying a substantial burden of persuasion. In re Stallworth, 208 N.J. 182, 194 (2011). An agency's determination must be sustained "'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (quoting In re Herrmann, 192 N.J. 19, 27-28 (2007)). "[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result.'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We are not, however, bound by an agency's interpretation of legal issues, which we review de novo. Russo, 206 N.J. at 27.

We have reviewed the record and find no basis on which to disturb the DOC and DOH decisions. We begin our analysis with a proper framing of the issues before us. First, DOC and DOH did not deny appellant access to a computer and printer at the STU. Although the parties dispute the number of

11

computers and printers available on appellant's unit, the record established appellant was afforded access to a computer and printer for therapy and legal access on a regular basis. Appellant produced no evidence he was on any occasion prevented from accessing a court, communicating with his counsel, or completing therapy because of a lack of access to a computer or printer.

Appellant, however, argues he has a constitutional right to possess a personal computer and printer to allow him unlimited use of those devices. In addition, he argues he is entitled to a personal computer with internet capability, a feature not available on the computers provided by the STU. Appellant argues internet access on a personal computer is necessary both to provide a realistic opportunity for his successful treatment and release and to facilitate his rights to free speech and access to the courts. Appellant concedes his access to the internet on a personal computer could be "limited," but does not explain the limitations he believes would survive constitutional scrutiny.

The denials of appellant's requests to possess an internet-capable personal computer and printer are amply supported by the safety and security concerns identified by DOC. Appellant has been adjudicated to have a mental abnormality or personality disorder that causes serious difficulty in controlling his sexually violent behavior such that he is likely to commit a sexually violent

12

offense if he is released without successful treatment. Permitting appellant to possess an internet-capable personal computer twenty-four hours a day, including the hours he spends in his living quarters without close supervision, raises obvious security concerns. As noted by Administrator Nah, such circumstances would create the opportunity for appellant to prey on unsuspecting victims and to find, download, and store pornography and illicit images. DOC's security concerns, which are entitled to our deference, are sufficient to sustain the agency's decision.

Because DOC is responsible for maintaining the security of the STU, we need not address at length the basis for DOH's final decision. In denying appellant's request to possess an internet-capable personal computer and printer, DOH, in effect, acknowledged DOC's authority to maintain the security of the facility. Nothing in the record suggests DOH believes an internet-capable personal computer and printer are necessary for appellant's success in therapy or to prepare him for release to the community. While DOH is taking steps "to identify ways that [r]esidents can be supported with technology that will help them complete therapy work," Stanzione's response to appellant's letter does not suggest the agency is contemplating authorizing residents to possess internet-capable personal computers and printers. Nor is there any suggestion in the

A-2837-22

record appellant is on the threshold of being released from the STU and would soon be looking for employment requiring him to access the internet.

We are not persuaded by appellant's legal arguments, which we address in turn.

A.    Factual Basis of Decisions.

Appellant argues the agencies' decisions are based on two factual errors: (1) an inaccurate number of computers and printers available to STU residents; and (2) Nah's statement "it would be virtually impossible" for DOC and DOH to monitor appellant's use of an internet-capable personal computer and printer effectively. He argues the decisions should be vacated and the matters remanded for a hearing to resolve these alleged factual disputes.

We are not convinced the precise number of computers and printers available to STU residents is germane to the validity of the agencies' decisions. There is no dispute appellant is provided access to a computer and printer in his housing unit. He also conceded STU staff sometimes permits him to use devices in other housing units. As noted above, appellant did not identify any instance in which he was prevented from filing a document with a court, completing his therapy, or communicating with his counsel because a computer or printer was unavailable to him.

14

B.    Technology to Monitor Personal Computer Use.

We are also not persuaded a hearing is necessary to determine whether software is available to permit DOC and DOH to effectively monitor appellant's use of an internet-capable personal computer and printer. We have recognized the utility of software to monitor the use of internet-capable devices by parolees to facilitate their successful integration into society. State v. R.K., 463 N.J. Super. 386, 415 (App. Div. 2020) (citing K.G. v. N.J. State Parole Bd., 458 N.J. Super. 1 (App. Div. 2019)). Appellant argues DOC and DOH should be required to establish software of this type would be ineffective at monitoring his use of an internet-capable personal computer and printer at the STU.

Appellant, however, is not a parolee. He has, after a trial, been civilly committed to a secure treatment facility because of the danger he poses to the community as a result of his likelihood to commit a sexually violent offense if released without treatment. Unlike a parolee who has been released from custody and is navigating reentry into society, where access to the internet is increasingly necessary to function effectively, id. at 417-18, appellant is confined to a secure treatment facility to receive the therapy he needs to prevent him from committing a sexually violent offense in the future. DOH has not indicated appellant's possession of an internet-capable personal computer and

printer is necessary for his successful treatment. We therefore see no basis on which to require DOC and DOH to establish at a hearing the efficacy of available monitoring software for internet-capable personal computers and printers at the STU.[3]

C.    Denial of Due Process.

Appellant argues the agencies' decisions violate his right to substantive due process under the federal and state constitutions. He argues the prohibition on his possession of an internet-capable personal computer and printer involves a greater deprivation of his liberty than is reasonably necessary because he did not use the internet in the commission of his criminal offenses. In addition, appellant argues he is being denied the reasonable possibility of achieving successful treatment and release because he does not have the opportunity to become familiar with using the internet, a skill he alleges will be necessary for his reintegration into society.

We do not find support in the record for appellant's suggestion the prohibition on possessing an internet-capable personal computer and printer at

---

[3] It was appropriate for DOC to assume if it granted appellant's request, other STU residents would demand permission to possess an internet-capable personal computer and printer. The widespread presence of internet-capable devices and printers at the STU would amplify the burden on DOC of monitoring the use of those devices.

the STU should apply only to residents who committed their underlying sexually violent offenses through use of the internet. DOC's decision was based on security concerns, not therapeutic objectives. There is no doubt providing an internet-capable personal computer and printer to a resident of the STU creates the opportunity for that resident to contact people outside the facility. That contact raises security concerns, including the potential for the introduction of contraband into the facility, the downloading of pornography and illicit materials, and the victimization of members of the public. Those concerns arise whether or not the resident used the internet in the commission of his underlying sexually violent offenses.

Nor are we persuaded appellant must have access to an internet-capable personal computer and printer to have a reasonable chance to be successfully treated and released from the STU. We are confident in the event appellant's treatment advances to the point he is approaching release from the facility, DOH will take the steps necessary to prepare him to successfully integrate into society. We are not presented with those circumstances in this appeal.

D.   Free Speech and Access to the Courts.

As noted above, our review of the record revealed no evidence appellant was denied access to the courts on any occasion because a computer or printer

17

was not available at the STU.  Nor do we see evidence appellant has suffered a deprivation of his First Amendment rights because he is not permitted to possess an internet-capable personal computer and printer.

We acknowledge "[t]here is no iron curtain drawn between the Constitution and the prisons of this country."  DeCamp v. N.J. Dep't of Corrs., 386 N.J. Super. 631, 640 (2006) (quoting Wolff v. McDonnell, 418 U.S. 539, 555-56 (1974)).  In addition, a civil committee's constitutional rights are not subject to the more restrictive conditions applicable to a prisoner.  See Kansas v. Hendricks, 521 U.S. 346, 363 (1997).  However, significant security concerns are present at the STU, where each resident has been found to be an SVP likely to commit a sexually violent offense if released without treatment.  In light of DOC's interest in maintaining the security of the STU and the absence of evidence appellant suffered a constitutional deprivation as a result of not being permitted to possess an internet-capable personal computer and printer, we find no basis to reverse the agencies' decisions on constitutional grounds.

To the extent we have not specifically addressed any of appellant's remaining contentions, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

18