# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2475-17T5

IN THE MATTER OF THE CIVIL
COMMITMENT OF E.S.,
SVP-769-17.

_____

Argued September 11, 2019 – Decided October 1, 2019

Before Judges Koblitz, Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. SVP-769-17.

Susan Remis Silver, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Susan Remis Silver, on the briefs).

Stephen J. Slocum, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Stephen J. Slocum, on the brief).

PER CURIAM

E.S. appeals from the trial court's December 26, 2017 order entered

following a review hearing pursuant to N.J.S.A. 30:4-27.32(a), which committed

him to the Department of Human Services Special Treatment Unit (STU) under

the Sexually Violent Predator Act (SVPA), N.J.S.A. 30:4-27.24 to -27.38. E.S. was adjudicated delinquent of sexual crimes against a minor when he was fourteen years old. After years of probation and court-ordered sex offender treatment as a juvenile, and currently as an adult, the State filed a petition to civilly commit him, which was granted by Judge Philip M. Freedman after a three-day hearing.

Defendant raises the following issues on appeal:

POINT I: THE TRIAL COURT ERRED IN QUALIFYING THE TWO STATE DOCTORS WHO LACKED EXPERTISE IN JUVENILE-ONLY SEX OFFENDER RISK.

A. DR. PAOLILLO HAS NO EXPERTISE ON THE JUVENILE BRAIN.

B. DR. PAOLILLO LACKED EXPERTISE ON SEXUAL RECIDIVISM RATES.

C. DR. PAOLILLO LACKS EXTENSIVE EXPERIENCE IN ASSESSING THE RISK OF JUVENILE-ONLY SEX OFFENDERS.

D. THE TRIAL COURT ERRED WHEN IT QUASHED E.S.'S SUBPOENA.

E. DR. PAOLILLO FAILED TO USE "BEST PRACTICES" TO ASSESS E.S.

F. DR. PAOLILLO WAS UNFAMILIAR WITH RELEVANT LITERATURE.

A-2475-17T5

G.    DR. PAOLILLO INAPPROPRIATELY USED THE SVR-20 TO ASSESS RISK.

H.    DR. PAOLILLO MISUSED THE SVR-20 BY INVENTING HER OWN IDIOSYNCRATIC SCORING THAT NO ONE HAD EVER VALIDATED.

I.    DR. HARRIS DEMONSTRATED NEITHER EXPERTISE NOR EXTENSIVE EXPERIENCE IN ASSESSING JUVENILE-ONLY SEX OFFENDERS

J.    DR. HARRIS LACKED EXPERTISE ON THE APPLICABILITY OF ADULT RISK ASSESSMENT TOOLS TO JUVENILE-ONLY OFFENDERS.

K.    DR. HARRIS GAVE NO EMPIRICAL SUPPORT FOR RISK FACTORS.

L.    DR. HARRIS NEVER DEMONSTRATED ANY INDEPENDENT KNOWLEDGE ABOUT JUVENILE-ONLY SEX OFFENDERS SUCH AS E.S.

POINT II:    THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO HOLD A N.J.R.E. 104 HEARING ON WHETHER JUVENILE SEX OFFENDER RISK ASSESSMENTS ARE SUFFICIENTLY RELIABLE FOR EXPERT TESTIMONY.

A.    ACTUARIAL ASSESSMENTS ARE NOT RELIABLE ON JUVENILES.

B.    THE TRIAL COURT ERRED WHEN IT HELD THAT CLINICAL JUDGEMENT ALONE COULD SUPPORT COMMITMENT BECAUSE THE STATE FAILED TO PROVE THAT CLINICAL

3

JUDGEMENT COULD RELIABLY PREDICT E.S.'S SEXUAL RECIDIVISM RISK.

C.    NO JUDICIAL PRECEDENT SUPPORTS RELIANCE ON ONLY CLINICAL JUDGEMENT IN COMMITMENT DECISIONS UNDER THE SVPA.

POINT III:  THE TRIAL COURT ERRED WHEN IT FAILED TO EXCLUDE DR. HARRIS' AND DR. PAOLILLO'S UNSUPPORTED TESTIMONY AS NET OPINION.

A.    DR. HARRIS OFFERED ONLY NET OPINION ON E.S.'S RISK.

B.    DR. PAOLILLO OFFERED INADMISSIBLE NET OPINION ON RISK.

POINT IV:   THIS COURT SHOULD REVERSE BECAUSE THE TRIAL COURT FAILED TO CONSIDER E.S.'S REDUCED RISK AS A JUVENILE-ONLY OFFENDER.

POINT V:   THIS COURT MUST REVERSE BECAUSE E.S.'S COMMITMENT WAS BASED ON FALSE INFORMATION ABOUT HIS RECORD.

A.    E.S. HAS NO ADJUDICATION OF A SEX OFFENSE AGAINST M.F.

B.    E.S.'S RECORD CONTAINS NO CHARGES STEMMING FROM HIS BEHAVIOR AT NINE-YEARS OLD.

C.    E.S. WAS NOT ADJUDICATED OF MULTIPLE CHARGES AGAINST C.F.

A-2475-17T5

D.    THE STATE ASSUMED E.S.'S DISMISSED CHARGES WERE TRUE.

E.    DR.   HARRIS   AND   DR.   PAOLILLO TESTIFIED ABOUT VICTIMS WHO SEEMED TO BE NONEXISTENT.

POINT VI:  E.S.'S COMMITMENT WAS BASED ON INADMISSIBLE HEARSAY.

We affirm substantially for the reasons set forth in Judge Freedman's comprehensive eighty-five-page oral opinion.  We nonetheless comment on the facts and arguments raised by E.S.

"The scope of appellate review of a commitment determination is extremely narrow."  In re Civil Commitment of R.F., 217 N.J. 152, 174 (2014) (quoting In re D.C., 146 N.J. 31, 58 (1996)).  Appellate courts "give deference to the findings of our trial judges because they have the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'"  Ibid. (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  "So long as the trial court's findings are supported by 'sufficient credible evidence present in the record,' those findings should not be disturbed."  Id. at 175 (quoting Johnson, 42 N.J. at 162).

"The judges who hear SVPA cases generally are 'specialists' and 'their expertise in the subject' is entitled to 'special deference.'"  Id. at 174 (quoting In

5

re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). "Accordingly, an appellate court should not modify a trial court's determination either to commit or release an individual unless 'the record reveals a clear mistake.'" Id. at 175 (quoting D.C., 146 N.J. at 58).

E.S., now twenty-two years old, was reported to be involved in several incidents alleging sexual assault of a child during his youth. Each juvenile delinquency complaint was eventually dismissed, with the exception of the one involving the February 2011 incident, which led to his delinquency adjudication.[1]

We glean the following information from the hearing and treatment records discussed by Judge Freedman. In 2005, when he was nine years old, E.S. admitted he fondled a six-year-old boy. E.S. reported he was "running around playing having fun" with the boy and "st[uck] his hand down the boy['s] pants and grabbed the child's penis." This incident was not reported until E.S. was twelve years old and he was not charged.

---

[1]  E.S. also had a number of non-sexual complaints filed against him as a juvenile, which included charges of: multiple counts of possession of a weapon, disturbing the peace, aggravated assault, obstruction of arrest, resisting arrest, and contempt.

A-2475-17T5

In 2006, when E.S. was nine years old, he was charged several times with possession of a weapon, which resulted in a deferred disposition.

In June 2008, when he was twelve years old, E.S. was charged with what, if he had been an adult would constitute: fourth-degree criminal sexual contact with a ten-year-old girl, N.J.S.A. 2C:14-3(b); third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a); and second-degree sexual assault of the girl's five-year-old brother, N.J.S.A. 2C:14-2(b). The girl reported they were playing in a yard when E.S. took her behind some bushes, covered the girl's mouth while touching her vagina, and told her not to tell anyone. The girl also reported E.S. had touched her brother in a similar fashion. These charges were eventually dismissed with a finding that E.S. was incompetent to stand trial.

In July 2010, when he was fourteen years old, E.S. was accused of what, if an adult would constitute: first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a); second-degree sexual assault, N.J.S.A. 2C:14-2(b); and third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4. A complaint, later filed on February 25, 2011, alleged E.S. had forced his ten-year-old female cousin to touch his penis and digitally penetrated her vagina. The charges were eventually dismissed.

On February 24, 2011, when he was still fourteen years old, two more juvenile delinquency complaints were filed against E.S. Each complaint charged him with, if committed by an adult, would be one count of second-degree sexual assault, N.J.S.A. 2C:14-2(b), and one count of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4. One complaint described an incident where E.S. lay on top of his seven-year-old female cousin—the sister of the girl from the alleged July 2010 incident—and rubbed his penis on her vagina. The other complaint detailed a second incident where E.S. forced the same cousin against a wall and rubbed his penis on her rear end. During the latter incident, the girl's mother intervened and E.S. became enraged and threatened her. The girl's father, a police officer, also intervened and restrained E.S. E.S. was adjudicated delinquent on July 12, 2011. He received three years of probation, was required to register under Megan's Law, N.J.S.A. 2C:7-1 to -5, and was ordered to a residential placement for sex-offender treatment.

E.S. attended Capital Academy from May 2012 until October 2014, and was required to participate in sex offender treatment. While at Capital Academy, E.S. had to be put in physical restraints five times after he failed to take his medications. E.S. also reportedly attempted to enter a shower with the intent to rape another resident at the academy, but staff intervened before he

could do so. Staff also had to intervene during an incident in November 2013, when E.S. choked himself with a string. E.S. reported it was sexually exciting for him to be touched by staff members.

E.S. also received two juvenile delinquency complaints on April 10, 2014, while he was still at Capital Academy. The complaints charged him with what, if committed by an adult, would be second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1); third-degree possession of a weapon, N.J.S.A. 2C:39-4(d); and third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(5)(d). E.S. allegedly punched one staff employee in the jaw and struck another with a wooden cutting board. He was removed from Capital Academy based on assault charges and placed in detention. E.S. was adjudicated delinquent for aggravated assault pursuant to these complaints. E.S. was adjudicated in violation of his probation based on the new adjudications. E.S. was then sentenced to four years at a Juvenile Justice Commission facility in Jamesburg.

While at the facility, E.S. reportedly engaged in "compulsive masturbation which resulted in injury to his genitalia" and expressed the desire to "physically assault and rape a resident because he had not had sex in a significant time." He also was charged with other misbehavior. E.S. voluntarily elected to be transferred to the Adult Diagnostic & Treatment Center to participate in sex

offender specific treatment in November 2015. He was then temporarily committed to the STU pending his civil commitment hearing.

"The SVPA permits the State to involuntarily commit 'a person who has been convicted . . . of a sexually violent offense' who 'suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.'" R.F., 217 N.J. at 173 (quoting N.J.S.A. 30:4-27.26).

The SVPA defines the phrase "likely to engage in acts of sexual violence" as meaning "the propensity of a person to commit acts of sexual violence is of such a degree as to pose a threat to the health and safety of others." N.J.S.A. 30:4-27.26. "This dangerousness standard differs from that contained within the general civil commitment statute, N.J.S.A. 30:4–27.2(i), which defines dangerous as a 'substantial likelihood that the person will inflict serious bodily harm upon another person . . . within the reasonably foreseeable future.'" In re Commitment of W.Z., 339 N.J. Super. 549, 571–72 (App. Div. 2001). The SVPA defines "mental abnormality" as a "mental condition that affects a person's emotional, cognitive or volitional capacity in a manner that predisposes that person to commit acts of sexual violence." N.J.S.A. 30:4-27.26. The use of the words 'emotional,' 'cognitive,' or 'volitional' "indicates that the Legislature

10

intended to insure that every individual who has a substantial inability to exercise control over sexually violent behavior would be within the Act's reach." In re Commitment of W.Z., 173 N.J. 109, 129 (2002).

"If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and treatment of sexually violent predators." N.J.S.A. 30:4-27.32(a). In order to classify a person as a sexually violent predator, the State must prove: (1) "the individual has been convicted of a sexually violent offense"; (2) the individual "suffers from a mental abnormality or personality disorder"; and (3) "as a result of his psychiatric abnormality or disorder, 'it is highly likely that the individual will not control his or her sexually violent behavior and will reoffend.'" R.F., 217 N.J. at 173 (quoting W.Z., 173 N.J. at 130); see also N.J.S.A. 30:4-27.26.

"The experienced judges assigned to hear these cases have the difficult task of assessing expert testimony that often is in conflict, making factfindings about events described from varying viewpoints, and ultimately predicting the probability of a person's future conduct." R.F., 217 N.J. at 156.

"The final decision whether a person previously convicted of a sexually violent offense is highly likely to sexually reoffend 'lies with the courts, not the expertise of psychiatrists and psychologists. Courts must balance society's interest in protection from harmful conduct against the individual's interest in personal liberty and autonomy.'" R.F., 217 N.J. at 174 (quoting D.C., 146 N.J. at 59).

The State called two experienced expert witnesses and E.S. called one expert. All three testified that E.S. suffered from pedophilia and other mental disorders. All three agreed as well that the standardized tests used for adult offenders were not created to evaluate the risk of re-offense of an individual with a history of juvenile adjudications only. They also agreed that the risk of re-offense for juvenile-only offenders was significantly lower than for adult offenders: as low as five percent of juvenile-only sexual offenders reoffend as adults.

The State's witnesses, however, opined that based on their clinical evaluations, E.S. was in that small group of juvenile-only offenders highly likely to sexually reoffend as adults. E.S.'s expert, to the contrary, opined that E.S. was not likely to reoffend based on statistical probabilities.

A-2475-17T5

Judge Freedman detailed the many reasons two of the experts found E.S. highly likely to sexually reoffend, including E.S.'s lengthy history of being sexually abused as a child; his numerous admitted incidents of sexual acting out; his serious major mental illnesses including pedophilia, psychosis, personality disorder, depression and suicidal ideation; and his "[l]ack of realistic plans and negative attitudes towards intervention." E.S. also has Klinefelter's Syndrome.[2] Judge Freedman found that no specific standardized test was deemed appropriate for the evaluation of juvenile-only offenders, but properly found that he could assess the likelihood to reoffend based on the experts' well-founded and well-explained opinions. He found both of the State's experts provided valuable information and insight into E.S.'s likelihood to reoffend. They both relied on information in the record routinely used by experts in the field, In re Civil Commitment of J.H.M., 367 N.J. Super. 599, 612 (App. Div. 2003), and did not render net opinions, see Pomerantz Paper Corp. v. New Community Corp., 207 N.J. 344, 372 (2011) (defining a net opinion as "an expert's bare opinion that has no support in factual evidence or similar data"). As he stated, Judge Freedman did not rely on impermissible hearsay in reaching his conclusions.

---

[2] Klinefelter Syndrome is a genetic condition that causes males to be born with an extra X chromosome. See Stedman's Medical Dictionary 1733 (26th ed. 1995).

Judge Freedman also acted within his discretion in quashing E.S.'s subpoena requesting additional background information regarding the qualifications of one of the State's experts.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2475-17T5